# CITY OF COLUMBIA, Appellant, v. BRIGHT.

**Division One, February 10, 1904.**

1. **Location of Street:** PLAT: STARTING POINT.   Where a plat of a town purports to be the plat of a certain quarter section, and there is located on it a house as a starting point, and from it the true lines of every street mentioned thereon can be run, measured and located, it can be used thereafter for fixing the width and true location of a street, in a suit in ejectment by the city against a private citizen who has appropriated a part of the street.

2. **Street:** ADVERSE POSSESSION.   Since the statute of 1865 went into effect, no person can acquire title by adverse possession to any part of a public street.   And an instruction which bases a private claimant's right to a part of a street on adverse possession, should be confined to the adverse possession prior to that time.

3. ———: FAILURE TO GRADE: ESTOPPEL.   The fact that a house and retaining wall extended over into a street, and that the city in grading and macadamizing the street left them in the condition in which they had thus been for many years, does not confer any legal right or title upon the owner of the house and lot to that part of the street left unimproved.   A failure to grade or improve any part of a street does not estop the city from thereafter claiming that part.

Appeal from Boone Circuit Court.—*Hon. Jno. A. Hockaday,* Judge.

REVERSED AND REMANDED.

*W. H. Rothwell* for appellant; *N. T. Gentry* of counsel.

(1)   The statute of 1865 was the first law on the subject of the vacation of streets and alleys in municipal corporations, and the removing of the statute of limitations against such corporations.   (2)   There was not only a failure of affirmative proof on the subject of adverse possession but the evidence affirmatively showed that no claim whatever was made by any of the former owners to a part of this street. (3)  Plaintiff's fourth instruction was a correct statement of the law applicable to this case; its refusal constitutes reversible error. Bakewell v. McKee, 101 Mo. 337; Pharis v. Jones, 122 Mo. 130; Wilson v. Purl, 148 Mo. 449.   (4)   (a)   The court erred in giving instruction No. 1 at the request of the defendant.   It told the jury that the burden of proof was on the plaintiff to show to their satisfaction that, at the time of the institution of this suit, the defendant was in possession of the strip of ground in controversy; and unless this fact was shown to the reasonable satisfaction of the jury, the verdict should be for the defendant.   This probably would have been correct, if the defendant had denied having the same in his possession; but a plea of adverse possession necessarily admits the possession of the ground in controversy.   This instruction, therefore, was misleading and confusing; it submitted to the jury an issue which was out of the case, and out of the case by reason of the defendant's evidence.   Brown v. Railroad, 101 Mo. 496; Railroad v. Railroad, 118 Mo. 625; Colliott v. Am. Mfg. Co., 71 Mo. App. 170; Pratt v. Conway, 148 Mo. 299; State ex rel. v. Branch, 151 Mo. 636.   (b)  Defendant's instructions 2, 3, 4 and 5 should not have been given because there was no evidence on which to base them; this has always been held to be reversible error.   State v. Weaver, 165 Mo. 1; Atkins v. Nicholson, 31 Mo. 488; Jones v. Grossman, 59 Mo. App. 195.   Besides, these instructions

comment on and give undue prominence to the testimony of the defendant. "The vice of specially calling the attention of the jury to isolated facts or otherwise giving prominence to a view of the case favorably to one side, while measurably retiring the view of the other side by ignoring it, or presenting it only in general terms, has been frequently condemned by this court." Barr v. Kansas City, 105 Mo. 559; McFadin v. Catron, 120 Mo. 274; Railroad v. Stock Yards, 120 Mo. 565.

*Gillespy & Conley* and *E. W. Hinton* for respondent.

(1) Plaintiff wholly failed to show any title to the strip of land in controversy, and hence has no standing on this appeal to question the defendant's title, whether by adverse possession or otherwise. Snuffer v. Howerton, 124 Mo. 637. Plaintiff asserted a paper title to this strip of ground as a part of Ninth street under the dedication by the recorded plat filed by the county commissioners in 1821. Plaintiff must recover, if at all, on the strength of that title, not on the weakness of the defendant's title. Unless, therefore, plaintiff shows prima facie title under the plat, which alone is relied on as a dedication, the verdict and judgment in favor of the defendant in possession was unquestionably for the right party, regardless of the merits of his title. But this plat could not pass title to the streets, because it furnished no description by which they could be located. In the case of a deed the rule is fundamental that in order to pass the title to a tract of land it must be so described as to render it susceptible of identification. The description may, of course, be by monuments, natural or artificial, or by reference to surveys or other data, from which the identification can be obtained. When monuments or other sources of identification are referred to in the instrument, then parol evidence is admissible to establish their location. But

where no means of identification are given in the instrument, then it is void for uncertainty, and can not be helped out by parol. Campbell v. Johnson, 44 Mo. 247. A plat, of course, which is relied on as showing a dedication of streets or alleys, must, so far as certainty of description is concerned, stand upon precisely the same footing as a deed. It must in terms or by reference locate itself on the face of the earth, otherwise it is a mere checker-board picture. The plat in question is exactly in this situation. It gives the dimensions of streets, blocks and lots on paper, but it neither locates them on the ground, nor furnishes any means of locating them. It does not tie on to anything. It could be shifted anywhere within the quarter section, or out of it, for that matter, and fit one place as well as another. (2)   The evidence showing that the defendant's grantors had built a brick house and a permanent stone retaining wall on the strip of ground in controversy more than fifty years ago and had so occupied and used it from that time to the present as their own, was amply sufficient to establish title by adverse possession, if not absolutely conclusive on that question. Hamilton v. West, 63 Mo. 93; Brummell v. Harris, 148 Mo. 443; Ins. Co. v. St. Louis, 98 Mo. 422. (3)   The court properly refused the plaintiff's fourth instruction on several grounds: First. It was erroneous in declaring that the adverse holding must have commenced prior to 1865, when in fact the act excepting lands held to a public use, etc., from the running of the statute, did not go into effect until the first of August, 1866. G. S. 1865, sec. 2, ch. 224. Second. It was erroneous in declaring that the possession of the strip in controversy must have been taken under color of title. Color of title is wholly immaterial where actual possession is taken, as in this case, by the erection of a building and the enclosure of the ground with a permanent wall. Goltermann v. Schiermeyer, 111 Mo. 421. Third. It was misleading and amounted to a comment on the evidence in declaring that taking

possession of the strip and building a house thereon was not sufficient to constitute adverse possession. Abstractly it may be true in a limited sense that the mere erection of a building on a piece of ground is not *per se* adverse possession. Cases are possible in which the peculiar circumstances would preclude any idea of an adverse holding. But ordinarily the erection of a building on a strip would present the very strongest evidence from which a jury could infer adverse possession. Hamilton v. West, 63 Mo. 93; Goltermann v. Schiermeyer, supra; Leeper v. Baker, 68 Mo. 407. (4) No error was committed in giving defendant's fourth and fifth instructions which simply declared that if the city had recognized defendant's boundaries for the statutory period by conforming the improvements to the retaining wall and building, that fixed the division line and precluded a recovery. Ins. Co. v. St. Louis, 98 Mo. 423. It is a familiar rule that when a line is fixed by agreement, express or implied, the holding of each party to that line is adverse. Flynn v. Wacker, 151 Mo. 545. The establishment of a division line by agreement need not be shown by direct or positive evidence. It may be shown by the conduct of the parties in recognizing and acquiescing in the location of the visible boundary. Ernsting v. Gleason, 137 Mo. 594.

*N. T. Gentry* and *Webster Gordon* for appellant, in reply.

(1) The plat of the original town of Columbia, which now forms a part of the appellant city, was duly certified and recorded in the office of the recorder of deeds in Boone county in 1825, by the county commissioners of Boone county, the then legal owners and proprietors of the land upon which the original town of Columbia was laid off and platted. It was a part of the southeast quarter of section 12, township 48, range 13 in Boone county. The streets and alleys are set forth upon

said plat and described by their boundaries, course and extent; and lots were sold and conveyed with reference to the same from and after the date of recording said plat to the present time. Under the repeated rulings of this court, from an early date to the present time, the foregoing acts have been universally held to be a sufficient showing to constitute a dedication of all streets, alleys, or other parcels of ground reserved for public purposes. City of Hannibal v. Draper, 15 Mo. 638; Baker v. Vanderburg, 99 Mo. 390; Heitz v. St. Louis, 110 Mo. 618; McGinnis v. St. Louis, 157 Mo. 191; Milling Co. v. Riley, 133 Mo. 585; Thomas v. Hunt, 134 Mo. 402. (2) Respondent is estopped to deny the validity of the plat, or the correctness thereof, for the reason that he is claiming a part of lot 220, under the description contained in the same plat; and has sold the east part of said lot and another lot to Thomas Whittle and H. H. Banks, "as the same are known and designated on the recorded plat of the town, now city, of Columbia." Hannibal v. Draper, 36 Mo. 332; Williams v. St. Louis, 120 Mo. 409.

BRACE, P. J.—This is an action in ejectment to recover the possession of a strip of ground two and three-tenths feet wide and eighty feet long, of which the defendant is in possession and which the plaintiff claims is within the lines of Ninth street in said city. The petition is in common form. The answer a general denial. The defendant is the owner of lot No. 220, on the northeast corner of Broadway and Ninth streets in said city, and the controversy is as to the proper location of the east line of Ninth street which is the west boundary of said lot. At the close of plaintiff's evidence the defendant demurred thereto, the demurrer was overruled and defendant excepted, and at the close of all the evidence renewed his demurrer which was again overruled and again excepted to. The case was submitted to the jury on instructions and verdict was returned for the

defendant, from the judgment on which the plaintiff appeals.

On the trial the plaintiff introduced evidence of surveys by which it appeared that the strip in question is within the lines of said Ninth street.   In addition to the instructions in the nature of a demurrer to the evidence which were refused, and the instructions given at his request, the defendant also asked the following instruction:

"The court instructs the jury that if they believe from the evidence that Peter Wright made the original survey of the town or city of Columbia; and that said survey has been lost or destroyed, and the beginning or initial point of said survey, and no other point established or located from said initial point, can be found; and that said Wright's said survey was made without any reference to any government survey, by which an initial point could be established, then the surveys made and read in evidence by plaintiff are inaccurate and are not correct surveys of said town or city and the verdict must be for the defendant," which the court refused and to its refusal defendant excepted.   And defendant now contends that regardless of the merits on the issues submitted to the jury, the judgment of the circuit court must be affirmed because the plaintiff failed to show any title to the premises, in this, that the dedication and plat under which plaintiff claims, "could not pass title to the streets because it furnished no description by which they could be located."

(1)   The substance of defendant's contention is thus tersely stated in the brief of counsel:   "A plat, of course, which is relied on as showing a dedication of streets and alleys must, so far as certainty of description is concerned, stand on precisely the same footing as a deed.   It must in terms or by reference locate itself on the face of the earth; otherwise, it is a mere checkerboard picture.   The plat in question is exactly in this

situation. It gives the dimensions of streets, blocks and lots on paper, but it neither locates them on the ground nor furnishes any means of locating them. It does not tie on to anything.''

This contention can not be maintained. It loses sight of the following facts: That in the certificate of dedication by the commissioners of Boone county, under which both parties claim, it is certified that ''they have selected the southeast quarter of section number twelve in range thirteen, township forty-eight north, and thereupon have laid out a town which is called Columbia, and the annexed plat is the form and plan according to which said lots were laid out and numbered, as well as the form, size and courses of the streets, alleys and public grounds which, by reference to the map and the names, numbers, etc., will more fully appear and by reference to the colors will show the grounds belonging to the county for the use of public buildings etc., as above mentioned on said plat, and we do hereby certify that the aforesaid and annexed map is a correct and true plan of said town and county seat of said county of Boone.'' That on said plat the streets are shown to run north and south and east and west, crossing each other at right angles, and the lines thereof indicate their relative dimensions. That one of these streets running north and south is Fifth street, and two of the streets running east and west and crossing Fifth street at right angles, are Broadway and Locust streets. That the south line of Broadway and the west line of Fifth street are the north and east lines of lot No. ''178,'' the northeast corner of which lot is marked ''G'' on the plat. That the south line of Locust street and the west line of Fifth street are the north and east lines of lot No. ''52,'' the northeast corner of which lot is marked ''H'' on the plat, and the line running north and south between the two points is the west line of Fifth street. That in the northeast corner of lot No. ''52'' is another mark, ''X,'' and at the bottom of said plat is the following foot-note: ''A plat of the town of

Columbia. 'X' Hannah Hardin House. Witness to point marked 'H' in plat; and the northeast corner of lot 178 is marked 'G' in plat. The lots are eighty feet by one hundred and forty-two and one-half. Broadway and Water streets are each one hundred feet wide. The balance of the streets are sixty-six feet wide. The alleys are fifteen feet wide. The orange color represents the lots belonging to the county commissioners. The green color represents the lots heretofore sold to the trustees of Smithton. The red color, the lots belonging to the trustees of Smithton. The blue color represents the donation given to the county by the trustees of Smithton. Laid down by a scale of three hundred feet to an inch. Surveyed by Peter Wright, April, 1821. Peter Kearny, Alex. Butterworth, chain carriers; Chas. Barnes, marker.''

When the dedication plat and foot-note are read together and considered as a whole, it is apparent that the plat is not a mere ''checker-board picture.'' But on the contrary that it very effectually locates itself on the ground in Boone county, on the southeast quarter of section number twelve in range thirteen and township forty-eight north, and on that part of said quarter section on which the Hannah Hardin House then stood and still stands, by means of which, as a starting point, a line was established for the west line of Fifth street between Broadway and Locust, from which line as a base could be run, measured and located upon the ground the true lines of every street, alley and lot laid down on the plat. This plat was recorded on the 23d of February, 1825. By it, the town was laid off, the streets and alleys opened, the lots sold and occupied, and through it defendant's testator, Joel H. Haden, under whom defendant claims, acquired his title to lot 220 on the northwest corner of Broadway and Ninth streets, fronting eighty feet on Broadway and running back north with

. the east line of Ninth street one hundred and forty-two and one-half feet to an alley, as did the plaintiff to said streets, Broadway one hundred feet and Ninth street sixty-six feet in width.   By its number, dimensions and location as shown on this plat, the title to lot 220 passed from the commissioners of Boone county to Milton McRoberts by their deed dated June 26, 1827, and thereafter by mesne conveyances to the said Joel H. Haden, and it is not possible to affirm the judgment on the ground stated in this contention.   On the contrary, it appearing by the survey made by three competent surveyors prior to the institution of this suit (and to which survey this seems to be the only objection), that the true east line of Ninth street, according to this plat, is two feet and three inches east of the line on which the defendant was in the act of erecting the west wall of his building when this suit was instituted, and which he claimed was on the west line of his lot, the verdict and judgment should have been for the plaintiff, unless the defendant had acquired title to the strip in question by adverse possession.

(2)   The material facts disclosed by the evidence on this issue briefly stated are as follows:   Prior to the year 1836 a two story brick house, with one story and a half ell attached, had been erected on the southwest corner of lot 220, known afterwards as the Gentry Hotel or Tavern, the house fronting south on Broadway, the west wall and ell running north on or near the east line of Ninth street, and the lot further enclosed on that side by a fence running on a line with the west wall of the building and of the ell.   There were three entrances to the building, two in front opening on Broadway and one in the ell, opening on Ninth street; extending from the walls of the building into the street, a primitive pavement of loose flat rocks had been laid which constituted the public sidewalk of those streets in front of the building on Broadway, and on the side of the building and ell on Ninth street.   In this condition the premises re-

mained until in the year 1842 or 1843 when Broadway was graded and its improvement commenced.   The natural surface of the ground in that locality ascended from south to north and the effect of the grading was to lower Broadway in front of the house, and in order to protect the foundation thereof, a rock retaining wall was built in front of the house about a foot and a half or two feet high and extending out from the south wall about three feet into Broadway.    There was evidence tending to prove that this wall extended a few feet west of the west line of the house, and some evidence tending to prove that it turned the angle and went north in Ninth street a short distance until it feathered out on the higher ground, while there was other evidence tending to prove that there never was any wall on the west or Ninth street side of the house.    The evidence is in hopeless conflict on this subject.    But, however that may be, the undisputed evidence is, that the pavement of loose rock alongside the west wall of the house and ell remained *in situ* and continued to be as before an uninclosed public sidewalk of Ninth street.    In this condition the premises remained until Ninth street was graded and macadamized.    When this was done does not appear from the record; but the evidence tends to prove that it was done sometime prior to the year 1860.    In, doing this work the street was not graded up to the building, but a terrace some three or four feet wide was left in its former condition, on top of which the rock pavement remained as before, and still continued to be an open public sidewalk.    In this condition the premises remained until sometime in the year 1877 or 1878, when the old Gentry House was torn down, the lot graded, and a new building erected thereon, afterwards known as the "Garth Hall."    Mr. Duncan, a witness for the defendant, who superintended this work, testified that the west wall of this building was located from 14 to 16 inches further west than was the west wall of the old Gentry House; and there was some other evidence tending to show that

it was about two feet further west. In 1883 Joel H. Haden, having become the owner of the premises, converted the upper story into an opera house and thereafter the building was known as the "Haden Opera House." In 1888 Joel H. Haden died and the defendant, William H. Bright, became his executor and testamentary trustee. In February, 1901, the opera house burned down and when thereafter the defendant was proceeding to lay the foundation of a new building on the site of the former, he was notified by the city authorities to conform the west walls of his building to the true west line of his lot as disclosed by the survey aforesaid which they caused to be made, and which gave him the full complement of ground called for by his deeds and to Ninth street the width called for in the plat. This he refused to do and upon his proceeding to erect the foundation of the west wall of the building on a line two feet and three inches west of that line, this suit was instituted on the 11th of May, 1901.

The evidence tended to prove that the old Gentry House was occupied by Mrs. Ann Gentry and her family from the year 1836 to 1853; that at the time her occupation commenced, Broadway and Ninth streets were open, publicly traveled thoroughfares and streets of the town of Columbia up to the walls of her house facing those streets and so continued until Broadway was cut down in 1841 or 1842 and the retaining wall aforesaid erected therein, after which the travel on that street went outside of that wall, but continued as before on Ninth street, the elevation of the old sidewalk on that street being adjusted to the lower level of Broadway by a stone step, and this continued until Ninth street was graded and macadamized, after which pedestrians on that side of Ninth street could reach Broadway either by passing over the old sidewalk as before, or on the macadam alongside the terrace which was left to support it, as they might choose. And this condition continued until the old house was torn down in

1877 or 1878 and Garth Hall built.   That the west wall of this building extended west into Ninth street beyond the line occupied by the old Gentry building is beyond question.   How far beyond that line it is difficult to determine, but certainly on the evidence not less than fourteen inches and probably about two feet.   The evidence tended to prove that the west wall of the building that the defendant was in the act of erecting when this suit was instituted was on the line formerly occupied by the west wall of Garth Hall.   On this state of case the court submitted the issue to the jury upon instructions, among which were two given for the defendant which are as follows:

"4.   The court instructs the jury that if they find from the evidence that plaintiff when grading and improving Ninth street, left the house then built on lot No. 220, and the retaining wall, if any, on the west side thereof, standing, and did not remove or cause the same to be removed, but conformed its improvement and grading to said retaining wall, and kept them so conformed to said building and retaining wall for more than thirty-six years before this suit was instituted to recover that part of said building or wall claimed to be projecting into the street, this was a recognition of the defendant's and his grantor's right to hold the possession and to occupy that part of said street claimed in this suit, and plaintiff is estopped and barred from recovering in this action, and the verdict must be for the defendant.

"5.   The court instructs the jury that if they find from the evidence that plaintiff in adjusting, grading and improving Ninth and Broadway streets, left the house then on lot No. 220, and its retaining wall, if any, standing, and did not remove or cause the same to be removed, and that defendant, or those under whom he claims, had possession of said house and retaining walls prior to the year 1865, and claimed the ownership thereof, and so continued in possession up to the insti-

tution of this suit, claiming the possession of the same openly, exclusively and uninterruptedly up to the year 1877, and that at said date said house and retaining wall was torn down by defendant's grantors, and that the present wall or line of defendant is within the boundary or limits of said retaining wall, then the jury must find for the defendant.''

To the giving of which instructions the plaintiff excepted, and assigns the same as error.

(3)   These instructions are both erroneous. They apply indiscriminately to that part of the strip of land sued for, on which the old Gentry House may have stood, and that part west of the west line of that house within the line of the supposed retaining wall.   As we have seen, there never was any adverse possession by defendant's grantors of that part of the strip sued for lying west of the west line of the old Gentry House until "Garth Hall" was built in 1877 or 1878, and hence there was no ground upon which to predicate a right or title in defendant by adverse possession to that part of the strip on which the old Gentry House was not located, since the first entry thereon was made after the statute of 1865 went into effect, since which time no person can acquire title by adverse possession to a part of a public street.   Hence the second of these instructions is erroneous.

(4)   The fact that the city when grading and macadamizing Ninth street left the old Gentry House and the old sidewalk adjoining it in the condition in which they had been for many years previous thereto could not confer any legal right or title upon the defendant's grantors, to that part of the street thus left unimproved. The city authorities have the right to improve the streets, or any part of them, in any manner and to any extent that to them may seem proper and for the public interest, and it goes without saying, that in the circumstances of this case there can not be found any equity to estop the plaintiff from asserting its title to any part

of the strip in question.   The only defense the defendant had to plaintiff's action as to any part of that strip which was within the boundaries of Ninth street was adverse possession prior to the act of 1866, and to that defense the instructions on this issue should have been confined and to so much of the strip as had been covered by the old Gentry House.   Hence the first, as well as the second of these instructions, was erroneous.

For these errors the judgment will be reversed and the cause remanded for new trial.   All concur.