P. A. WHITWELL et al. v. S. W. SPIKER et al.,
Appellants.

**Division One, December 23, 1911.**

1. **EJECTMENT: Deed: Description: Burden of Proof.** Where
T has been for twenty years in open and visible possession at
the time a deed was made which referred to T's tract in bound-
ing the land granted, the presumption is that such reference
in the deed accords with T's possession, and the . burden of
proof rests on him who denies that fact.

2. ———: ———: ———: **Area.** In determining whether a
reference, in the description in a deed, to "T's tract of land"
means the unmarked boundaries of a survey corresponding. to
the description in T's deed, or whether it means the monuments
and fences established by the parties to T's deed at the time
possession was delivered (and which had been in existence
more than 17 years), the court must consider natural and per-
manent monuments, artificial marks, courses, distances and
area. In this case area becomes a controlling element.

3. ———: ———: ———: **Facts.** One Tooley, in 1880, ac-
quired a tract of land by deed, fenced it immediately and has
ever since lived upon it. Although he fenced in only two acres,
the area granted him in his deed, he placed his south fence
several feet beyond  his true line as established by a survey,
made over twenty years later, which followed the description
in his deed. Twenty years after Tooley took possession, the
owner of the land upon the south (who had purchased from
Tooley's. grantor the remainder of the section) deeded a bit of
ground adjoining Tooley's to W, the description in W's deed
beginning "at the southeast corner of Tooley's tract of land."
Next the said owner deeded to plaintiffs a tract adjoining W on
the south, said tract being described in the deed as running
to the southwest corner of "tract of land sold by grantor to W."
Defendants are purchasers of the southern part of W's tract.
Plaintiffs bring this action in ejectment to recover possession
of the strip of land which would be theirs should Tooley's pos-
session southward be curtailed by the description in his deed.
*Held*, that plaintiffs cannot recover. It is evident, under the
facts and circumstances in this case, that the parties adopted
the south fence of Tooley's enclosure as a monument to mark
their boundary.

Appeal from Jasper Circuit Court.—*Hon. D. E.
Blair,* Judge.

REVERSED.

*H. S. Miller* and *McReynolds & Halliburton* for appellants.

(1) (a) Adverse possession not only bars action, but confers title. Kirton v. Bull, 168 Mo. 622.. (b) Adverse possession is the act of holding possession claiming the right to do so against one having a superior right or title. St. Louis v. Priest, 103 Mo. 652; Ivy v. Young, 129 Mo. 501. (c) Adverse possession with the owner's knowledge and acquiescence need not be open and notorious. Dausch v. Crane, 109 Mo. 323. (d) The open and notorious adverse possession for the statutory period operates to convey as complete a title as by deed. Nelson v. Broback, 44 Mo. 596; Watt v. Dounell, 80 Mo. 195; Ekey v. Ingle, 87 Mo. 493. Our contentions are as follows: First, that Tooley was in November, 1898, and had been for eighteen years prior thereto, in the open, notorious, peaceable, adverse possession of the land to his south fence, claiming title. Therefore the title to the land to his south fence absolutely vested in him the same as though by deed. Second, that Tooley, for eighteen years prior to November 1, 1898 (date of deed to Watson), held possession of land to his south fence claiming to the fence with the knowledge and acquiescence of the Hinkles and of Brinkerhoff and Cunningham the then owners of the remainder of the forty, which vested title in him without regard to its being open and notorious. Third, that Hinkle and Tooley having fixed the south boundary line of Tooley's land and Brinkerhoff and Cunningham having acquiesced in said line, it became and was an agreed boundary line. Irwin v. Woodmansee, 104 Mo. 403; Schwartzer v. Gebhardt, 157 Mo. 99. (2) (a) All purchasers of land from Brinkerhoff and Cunningham and their grantees purchased with notice of the right and title of defendant to the

land he had under fence and was in possession of, and also of Tooley's right and title. Wigginhorn v. Daniels, 149 Mo. 165; Squires v. Kimball, 208 Mo. l. c. 119. (b) Notice sufficient to put one on inquiry as to the existence of a right or title, is presumed to be notice of such right or title. Rhodes v. Outcault, 48 Mo. 367; Meier v. Blaine, 80 Mo. 179; Roan v. Weim, 93 Mo. 503; Drey v. Doyle, 99 Mo. 459; Barrett v. Davis, 104 Mo. 549; Plow Co. v. Sullivan, 158 Mo. 440. (3) The evidence showing that F. M. Tooley fenced his land in 1880 and held possession to the south fence to 1898, claiming the enclosed land as his; the fact that when he took possession and fenced he only intended to fence and claim to the true line, did not destroy his adverse possession, it being his intention to claim, and his claiming and holding all that was fenced. The legal title was vested in Tooley when Brinkerhoff and Cunningham conveyed to Watson, and by the very terms of their deed to Watson, "commencing at the southwest corner of F. M. Tooley's tract of land," necessarily commenced at the southwest corner of his fence and ran south 416 feet, and defendant's peremptory instruction should have been given. Cole v. Parker, 70 Mo. 372; Knowlton v. Smith, 36 Mo. 507; Kincaid v. Dorney, 47 Mo. 337; St. Louis University v. McCune, 28 Mo. 481; Thomas v. Babb, 45 Mo. 384; Tamm v. Kellogg, 49 Mo. 118; Hailton v. West, 63 Mo. 93; Walbrunn v. Ballen, 68 Mo. 164; Handlan v. McManus, 100 Mo. 125; Cole v. Parker, 70 Mo. 379; Battner v. Baker, 108 Mo. 311; Goltermann v. Schiemeyer, 111 Mo. 405; Hedges v. Pollard, 149 Mo. 216; Schad v. Sharp, 95 Mo. 574; Lemmons v. McKinney, 162 Mo. 531; Pitts v. Sheriff, 108 Mo. 110; Schnare v. Austin, 106 Mo. 610; James v. Ins. Co., 148 Mo. 1; Davis v. Braswell, 185 Mo. 581; Milligan v. Fritts, 226 Mo. 200.

*C. H. Montgomery* for respondents.

(1) Tooley did not claim adversely until a year or two before this suit was brought. The possession of land is not adverse, however long it may be held, and does not ripen into title, where the defendant testified that he only claimed to the true dividing line. His possession, though for more than ten years, was not adverse, and where the evidence is conflicting as to whether the defendant claimed to be the owner of the disputed tract wherever the true line might be, or claimed to own only to the true line, it is a question for the jury. Ford v. McAnelly, 215 Mo. 393; Batner v. Baker, 108 Mo. 314; Jacobs v. Mosley, 91 Mo. 457; Schad v. Sharp, 95 Mo. 574; Krider v. Milner, 99 Mo. 145; Skinker v. Haags, 99 Mo. 209. (2) The good faith of Tooley's occupancy is a question for the court. Hunter v. Wethington, 205 Mo. 293; Gannon v. Gas Co., 145 Mo. 516; Smith v. Royse, 165 Mo. 654. (3) Where a subsequent deed adopts the corner of a tract previously deeded as a starting point, it will be the corner as described by such previous deed and not the corner of some fence. Manter v. Picot, 33 Mo. 490; Whittelsey v. Kellogg, 28 Mo. 406; Harding v. Wright, 119 Mo. 9.

BROWN, C.—Ejectment to recover a strip of land in Jasper county bounded in the petition as follows: "Beginning at a point four hundred and eighty-eight and five-tenths feet north and twenty-one and three-tenths feet east of the southwest corner of the southwest quarter of the southwest quarter of section thirty, in township twenty-eight of range thirty-two in Jasper county, Missouri, thence east one hundred and eighty-six and seven-tenths feet, thence north twenty-nine and nine-tenths feet, thence west one hundred and eighty-six and seven-tenths feet, thence south twenty-nine and nine-tenths feet to the place of beginning."

The trial was had in December, 1907, before the court, a jury having been waived, and the finding and judgment were for the plaintiff for the possession of the same land described in the petition, with nominal damages, from which this appeal was taken.

Both parties claimed under Cynthia Hinkle and John Hinkle, who were the owners of the entire forty acres, the west line of which is 1319 feet long. September 23, 1880, they conveyed, by warranty deed, to Francis M. Tooley, a parcel described as follows: "Two acres of land described as follows, beginning at the northwest corner of the southwest quarter of the southwest of section No. thirty No. (30), township twenty-eight of range thirty-two, thence running east one rod past a well near said line, thence south far enough to include *towe* acres in said tract to the west line."

Mr. Tooley immediately fenced his ground, his south fence being 414.3 feet south of the north line of the forty. His west fence is on the east side of a public road, and is twenty-one feet east of the west line of the forty, and his enclosure two hundred and five or two hundred and five and a half feet east and west, and contains a few superficial feet less than two acres. He has lived on the land, sometimes leasing the south end, ever since. He says in his testimony, and there is no attempt to weaken or dispute it, that Mr. Hinkle himself measured his ground, placing a stone at the southeast corner, and that he built the fence on those lines, where it still remains.

March 18, 1882, the Hinkles conveyed to William E. Brinkerhoff and George Cunningham by warranty deed, the entire forty, "except two acres in the northwest corner of said tract, containing thirty-eight acres more or less."

November 1, 1898, Brinkerhoff and Cunningham and their wives conveyed to Wm. Watson two acres of land beginning at "the southwest corner of F. M.

Tooley's tract of land,'' running south four hundred sixteen feet, east two hundred and eight feet, north four hundred sixteen feet, thence to beginning. October 6, 1902, Brinkerhoff released from a deed of trust a parcel of the land beginning at the south line of the forty, and running thence north nine hundred and two feet more or less to the south line of the land sold to F. M. Tooley. On August 7, 1900, Watson and wife conveyed to James W. Chambers and wife the north one hundred and four feet of his two acres, describing it as ''commencing at the southwest of F. M. Tooley's land,'' and on the same day sold to Robert N. Wade and wife the remainder of their two acres, describing it as commencing ''one hundred and four feet. south of the southwest corner of a tract of land belonging to F. M. Tooley.''

The Wades, in 1902, sold one hundred and fifty-six feet off the north side of the tract so purchased by them to J. S. Walker, and the remaining one hundred and fifty-six feet to Mrs. Spiker, who is, with her husband, defendant in this case. They claim that their south line is four hundred sixteen feet south of Mr. Tooley's fence, or eight hundred and thirty and three-tenths feet south of the north line of the forty, leaving four hundred eighty-eight and seven-tenths feet between their south line and the south line of the forty, of no part of which are the defendants in possession.

The plaintiffs claim under deeds dated September 1, 1902, and October 7, 1902, from Brinkerhoff and Cunningham and wives respectively, in each of which the land is described as follows: ''Beginning at the southwest corner of the southwest quarter of the southwest quarter of section thirty (30) in township number twenty-eight (28) of range number thirty-two (32), and running thence north on the section line four hundred and eighty-six (486) feet more or less to the southwest corner of tract of land sold by grantor to Wm. Watson, thence east two hundred and eight (208)

feet, thence south four hundred and eighty-six (486) feet, more or less, to section line, thence west on section line two hundred and eight (208) feet to place of beginning, being 2 32-100 acres more or less.''

Two or three years before the trial the defendants employed one Grieb to make a survey of the locality. He testified that he "found what they said was the well mentioned in the deed from Hinkle to Tooley,'' and made a survey in which he discovered that the land described in that deed should measure 226.5 feet east and west, and 384.6 feet north and south, so that Tooley's fence is 29.7 feet too far south.

At the close of the evidence, in which the foregoing facts were undisputed, the defendants asked a peremptory declaration of law in their favor, which was refused.

The court, in substance, declared the law to be that if Tooley, at the time of the conveyance from Brinkerhoff and Cunningham, had acquired title to his enclosure by adverse possession, the plaintiffs should not recover.

## OPINION.

This case seems to have been tried by the circuit court upon the theory that the rights of the plaintiffs and defendants rested entirely upon the question whether or not F. M. Tooley had acquired title by adverse possession to certain land inside his fence. The declarations of law given by the court were directed exclusively to those legal principles which should govern the trial of that issue. The court seems to have assumed that Mr. Tooley, between whom and the litigants there is no privity of estate, could, by disclosing his state of mind while in the occupancy of this land, make or break the case of either of them.

The only question to be determined is the meaning of the words "F. M. Tooley's tract of land" as

used in a deed made November 1, 1898, in which Wm. Brinkerhoff and wife and George P. Cunningham and wife were the grantors, and Wm. M. Watson was the grantee. If those words should be held to refer to the technical description, by metes and bounds, with reference to the lines and corners of the public survey, as contained in Tooley's deed, then there is evidence tending to justify the finding and judgment of the court for the plaintiffs; but if they are held to refer to the enclosure and possession of Mr. Tooley at the time the Watson deed was made, then there is no evidence to authorize or sustain the judgment of the trial court. That the court did not consider these words to refer exclusively to the paper title or deed by which Mr. Tooley acquired his land, is demonstrated by the fact that it tried his title to the entire tract included in his enclosure, by adverse possession. From this we infer that, in its opinion, the words quoted referred to lands held in fee by him and not to such as he might have held by mere possession or license.

On some such theory as this the right of defendants to the possession of the land in suit seems to have been tried vicariously in the person of Tooley. It would seem to follow that in the opinion of the circuit court, if Tooley's title to his entire tract should fail, then the title of every purchaser who had taken conveyance by descriptions dependent upon reference to "Tooley's tract of land" would fail with it.

It will be noted that this description avoids carefully any reference to Tooley's deed. That instrument is not made a part of the Watson deed in any manner whatever, but the land itself which the parties chose to describe as "Tooley's tract of land" is made a part of it, and this whole controversy turns upon the question, What did they indicate by that description?

Were this suit against Tooley, for the land included in his enclosure, his bare possession would sup-

port his right until plaintiff's should prove a better possessory title. Were it a suit by Tooley against the defendants in this case for having entered upon his possession, the bare proof of his prior possession would be sufficient to enable him to recover, except as against a better title. The fact of his possession would make it "Tooley's tract of land" as to all the world excepting the true owner who should choose to assert his title. So in this case Tooley having been in open and visible possession at the time of the execution of the deed to Watson, the presumption is that the reference in that deed accords with such possession, and the burden is on plaintiffs to show that it is not the "tract of land" referred to.

They attempt here to meet that burden by showing that Tooley claims under a deed, and that the deed does not describe a portion of the land which is within his enclosure; so that the question is presented whether or not the reference in the Watson deed is to the unmarked boundaries of a survey corresponding to the description in Tooley's deed, or to the monuments and fences established by the parties to that deed at the time possession was delivered and received, and which had then been in existence more than seventeen years. In answering this question we must take into consideration certain well established rules, according to which the intention of the parties is ascertained and expressed in relation to the establishment and perpetuation of the boundaries of land. Among the elements to be considered in the application of these rules are natural and permanent monuments, artificial marks, courses and distances and area; usually taking precedence in the order named. [Whitehead v. Ragan, 106 Mo. 231, 235.] Although area, or quantity, is perhaps the most yielding of all these, it sometimes becomes, as we shall see, the controlling element of the inquiry. [Cole v. Mueller, 187 Mo.

638; Hostetter v. Railroad, 108 Cal. 38; Hall v. Shotwell, 66 Cal. 379; Ellis v. Harris, 106 N. C. 395.]

In Jasper county the government survey constitutes a convenient standard for the description and measurement of land but its lines can only be found by reference to the visible monuments, both natural and artificial, which have been established for that purpose. These, in thickly settled communities, and especially in cities, become obliterated, and their places are supplied by houses, fences and other visible things that have been planted or adopted for that purpose. When this has been done they may be used as landmarks for all, and their removal does not, of course, remove the land that has been bought and sold with reference to them. As to these monuments, this court, in Jones v. Poundstone, 102 Mo. 244, said: "These stakes originally planted by Lloyd are monuments, and they determine the true corners of the mining lots. These lots were marked off on the surface of the land, and the lines thus fixed do not change with every new survey. Subsequent surveys will aid in finding lost corners, but where, as here, the old established corners are well known they must control."

In Whitehead v. Ragan, supra, the court, after remarking that the plat with reference to which the deed to a lot is made, in legal construction becomes as much a part of the deed as if it had been fully incorporated in it, said: "While the deeds, under which plaintiff claims title to lot 1 in the subdivision, must be construed as describing the land conveyed as being of the full length shown by the plat, it does not follow that the particulars of the description contained in the plat are conclusive of the correctness of such description. The plat is only intended to be a representation of the actual survey as made upon the land itself. It is in the nature of a certified copy of an instrument which will be controlled by the original."

In Taylor v. Zepp, 14 Mo. 482, 489, a deed conveyed the northern part or half of a tract of land containing 27.29 acres, the tract conveyed being 13.64 acres. It afterward developed that the principal tract contained 31.92 acres, but a little over two acres off the north end was covered by the St. Louis common. The seller and purchaser divided the tract between them equally, leaving out that part which fell within the common, and took possession accordingly. In holding that the purchaser was estopped from claiming one half of the entire tract according to the terms of his deed, this court said: "The object of rules of construction is to arrive at the intention of the parties, but no rules can be framed which will lead to so correct a conclusion as the interpretation pointed out by the acts of the parties themselves. We may resort to these rules in the absence of such indications, but who so well qualified to understand their own meaning as the parties themselves? Let it be admitted, in this case, that a line parallel to the north line of the patent, at a distance sufficient to give the quantity called for, is the line which by construction of law would be the proper one to give shape to the tract; does it follow that no other line could be agreed upon between the parties, including even the quantity and answering all the definite calls of the deed? A tract of thirteen or fourteen acres, at the north end of a larger tract, may be located by shifting the north line of the smaller tract in a variety of directions, and the quantity called for and the position required still be reserved. No doubt a straight line, parallel to the northern line, is the usual, natural and proper line, in the absence of action by the parties themselves; but if caprice, or equity, or an honest fulfillment of obligations should prompt the parties to select a curve, or a diagonal, or any other line, I do not know of any rule of law or equity which compels the courts to interfere."

We quote so fully from that case because it has some points in common with this which ought to be considered. In this case Mr. Tooley purchased two acres of land and took possession of almost exactly that quantity, leaving outside his fence twenty-one feet for a public road which runs along the west side of the forty. No doubt the opening of this road was the honest fulfillment of an arrangement which greatly benefited his grantor, the owner of the remainder of the land, as well as himself; and the fact that the situation so created endured for more than twenty years before it was questioned, indicates that it was satisfactory to the parties, and raises the presumption that it was their deliberate and voluntary act.

These cases suggest questions relating primarily to the rights of adjoining proprietors under arrangements which seem to have originated in a desire to protect themselves against future surveys, made, perhaps, after all other landmarks than the indicia of their own possession will have become obliterated. There is no reason why their neighbors, and others dealing with them in full view of the physical facts, should seek to interfere, or to overturn the conditions created by the only parties in interest.

The class of land descriptions to which the one now under consideration belongs is purely conventional, and depends upon the recognition of the public. As was said by this court in Marvin v. Elliott, 99 Mo. 616, 621: ''The law is well settled that land may be conveyed by a description or appellation by which it is well known in the neighborhood, and that parol evidence will be received for the purpose of showing that it is well known by the description by which it is designated in the deed.'' If it may be so conveyed, it goes without saying that the same description or appellation may be used to designate it where it is simply an incident to the description of other land. The words ''Tooley's land,'' or ''Tooley's tract of land,''

constitute the name of a physical object and derive their efficacy from the recognition of the public in the same way that the name of John Smith is convenient and efficient because it is connected in the minds of those that hear it with the person so designated. There is, however, an ambiguity latent in the words "John Smith." They are liable to excite the inquiry, Which John Smith? And we are at perfect liberty then to seek oral information on that subject, without fear of being thought to question the genuineness of the name. The words "Tooley's land" may possibly apply equally well to two distinct things. If that be true in this case, this court has lately suggested a means, peculiarly applicable to the facts we are considering, of ascertaining the particular thing to which they apply.

In Cole v. Mueller, supra, it had under consideration a deed in which the land conveyed was described as "ten acres more or less in the southeast corner of the northwest quarter of the northeast quarter, and more particularly described as being bounded on the north and west by land formerly owned by Salathiel Cole." There were two tracts of land which had formerly belonged to Salathiel Cole, both of which belonged to the grantor. The description in the deed, when it had gone far enough to reach the boundary line of the first tract, would include five acres, but in all other respects the conformity to the description of the deed would be perfect. If it included this first tract of land "formerly owned by Salathiel Cole" and went on to the next tract which would answer that same description, it would include ten acres. This court held that in explaining this ambiguity the other calls of the deed should be taken into consideration, and that the call for ten acres more or less indicated the intention of the parties to disregard the first boundary line that came within its description, and to con-

vey the land between that and the second. Applying this same rule to the transaction in question, we have no difficulty in ascertaining the intention of the parties, both grantor and grantee.

The deed from Brinkerhoff and wife to Mrs. Whitwell is dated September 1, 1902, and was recorded on October 6, 1902. At both those dates the land was subject to a mortgage owned by Mr. Brinkerhoff, which conveyed also the two acres conveyed to Watson, and, of course, it should be satisfied at or before the delivery of the deed to Mrs. Whitwell. In the entry of the satisfaction, he described the length of the tract he was releasing as being 902 feet, more or less, from the southwest corner of the forty to the south line of "Tooley's land," and in his own deed to Mrs. Whitwell, recorded at the same time, he described the land conveyed as beginning at the southwest corner of the forty and running north 486 feet, more or less, to the southwest corner of the land sold to William Watson. Adding about 416 feet, the length of the Watson tract according to the deed, makes 902 feet, the distance stated in the satisfaction of the mortgage. This is within about two feet of the distance given by the surveyor who testified for plaintiff as the result of his own measurement from the south line of the forty to Mr. Tooley's south fence, and indicates beyond doubt that having taken twenty years to think about it after his acquisition of the land, Mr. Brinkerhoff was willing to take Tooley's fence as the basis for his deed to Mrs. Whitwell. Mr. Cunningham adopted the same measurement in his deed made to her the next day, so that all the parties to the transaction—Mrs. Whitwell, Mr. Cunningham and Mr. Brinkerhoff—at the time of making the deed under which plaintiffs in this suit claim, interpreted the words "Mr. Tooley's tract of land" to be the land enclosed within his fence. Those words implied no assertion of title, but simply of reputation and recognition by the parties. [McKeon v. Millard,

47 Cal. 581, 583.]   The parties evidently adopted the south line of Tooley's enclosure as a monument to indicate their own boundary.   It was marked on the ground at the time by his fence, and was properly described in the deed to Watson, and no act or intention of Tooley could affect the operation of the conveyance, any more than a stranger, by removing the corner stone, could affect the title to one's farm.

For the reasons stated we do not think that Mrs. Whitwell, by her deeds from Brinkerhoff and Cunningham, took any title to the land in controversy. The facts upon which this conclusion is founded standing admitted in the record, we do not see what good purpose can be served by another trial, and the judgment of the Jasper Circuit Court is therefore reversed. *Blair, C.,* concurs.

PER   CURIAM.—The   foregoing   opinion   of BROWN, C., is adopted as the opinion of the court.   All the judges concur.