FOUNTAIN WATSON, Respondent, v. ENOCH G. MATSON, Appellant.

St. Louis Court of Appeals, May 5, 1914.

1. **SURVEYS: County Surveyor: Official Character of Surveys.** Surveys made by a county surveyor are official in character and prima-facie correct.

2. **BOUNDARIES: Sufficiency of Evidence.** In an action for damages for trespass, where the issue as to whether or not the land upon which the trespass was alleged to have been committed belonged to plaintiff or defendant depended upon

the location of the boundary line, which was described by metes and bounds in the conveyances involved in the respective chains of title, evidence *held* sufficient to establish that the land in question belonged to plaintiff.

3. ———: ———: Instructions. In an action for damages for trespass, where the issue as to whether or not 'the land upon which the trespass was alleged to have been committed belonged to plaintiff or defendant depended upon the location of the boundary line, which was described,by metes and bounds in the conveyances involved in the respective chains of title, evidence *held* sufficient to show that the county surveyor, in making a survey introduced in evidence which showed that the land in question belonged to plaintiff, started at a proper point, justifying the refusal of an instruction requested by defendant that there was no authority shown in plaintiff's chain of title for commencing the survey at that point.

Appeal from Ralls Circuit Court.—*Hon. Chas. E. Rendlen,* Special Judge.

AFFIRMED.

*David H. Eby* for appellant.

(1) The refusal of instruction number 2 asked by defendant was reversible error. Porter v. Gaines, 151 Mo. 560; City of St. Louis v. Meyer, 13 Mo. App. 383; s. c. 87 Mo. 276. (2) The refusal of the defendant's demurrer to the evidence was reversible error, for the reasons assigned under point I. (3) The two black oak trees cut by the defendant were standing on the south side of the traveled track of the road and within six feet of Matson's fence, as shown by the plaintiff's evidence and by all the evidence. The finding of the trial court that such trees were on plaintiff's land cannot stand where there was no legal evidence to support it. Hethcock v. Crawford County, 200 Mo. 176; Tipton v. Christopher, 35 Mo. App. 623.

*Hays & Heather* and *Ben E. Hulse* for respondent.

Defendant himself introduced in evidence the record of Wells' said survey and is therefore bound both

as to its being an official survey and as to what it
shows.  Carter v. Spracklin et al., 151 S. W. 451.

NORTONI, J.—This is a suit for damages accrued
through an alleged trespass.  Plaintiff recovered a
judgment of twenty dollars and defendant prosecutes
the appeal.

The controversy pertains to the value of four trees
which stood in the public road and were cut down by
defendant as though they belonged to him.  It appears
plaintiff and defendant own adjoining farms, but a
public road passes between them.  Plaintiff's land
lies north of that of defendant, and it is said a portion
of the public road is upon it.  On the other hand, de-
fendant insists that all of the public road is located on
his land.  The several trees involved here were stand-
ing in the road, and, according to the evidence of plain-
tiff, on his side of the land line; while, according to
the evidence of defendant, they stood upon his land,
for, indeed, he says all of the public road was platted
thereon.  The sharp issue of fact in the case relates to
the location of the land line dividing the estate of the
one party to the suit from the other and this, it seems,
turned upon the evidence of Mr. Ely, the county sur-
veyor, who had recently surveyed the land.

It appears that Auguste F. Delauriere is the com-
mon source of title, for at an early day he owned the
land belonging to both parties to the suit.  On October
27, 1837, he conveyed to Stephen Glascock a tract of
land containing 491.81 acres, described by metes and
bounds.  On March 20, 1838, the same grantor con-
veyed to G. D. Hawkins 120 acres immediately south
of that conveyed to Glascock.  In 1855, James D. Wat-
son, plaintiff's father, became the owner of 320 acres
of the land so theretofore conveyed by Delauriere to
Glascock, and in 1856 defendant became the owner of
the 120 acres which had been conveyed to Hawkins.
A number of deeds are in evidence.  On April 1, 1873,

partition deeds were made among the heirs of James
D. Watson. By one of these deeds plaintiff acquired
a portion of the land theretofore owned by his father
and such land adjoined that of defendant on the south;
and thereafter plaintiff acquired two other small tracts
of land which were theretofore parcel of that owned
by Glascock, and these two, adjoined the 120 acres
owned by defendant on the south. In 1861 the county
court of Ralls county ordered the public road changed
with a view of placing all of it on defendant's land, but
adjacent to the south line of the land now owned by
plaintiff. Whether the road was thus located precisely
is uncertain on the record before us, and, evidently, ac-
cording to the view of the trial court, it was not. It
does not appear that any survey was made of any of
these lands prior to 1886, and the dividing line between
the properties of plaintiff and defendant was not defi-
nitely ascertained. Plaintiff claimed a portion of the
roadway and defendant claimed it all. By the partition
deed through which plaintiff acquired title to a portion
of his land on April 1, 1873, reference is made to a point
twelve chains north of the corner of sections 2, 3, 10
and 11, township 55, range 5 west, as a point of begin-
ning with respect to the line of his property. It ap-
pears this point was subsequently reckoned with by
the county surveyor, Ely, in establishing the line be-
tween plaintiff and defendant, and the principal argu-
ment advanced for a reversal of the judgment relates
to this fact. Shortly before the institution of this suit,
the county surveyor, Ely, surveyed the line between
plaintiff and defendant, and, according to the line thus
surveyed, the trees cut by defendant in the public road,
stood on the land of plaintiff—that is to say, a por-
tion of the public road on which the trees stood is on
plaintiff's land. Manifestly, the judgment of the trial
court in favor of plaintiff was influenced by this survey.
There is evidence on the part of plaintiff tending to
prove that plaintiff owned the land on which the trees

stood, as there is an abundance of evidence, too, on the part of defendant to the contrary.

It is difficult, indeed, to ascertain, with certainty, all of the facts in the record, for the reason there are so many descriptions in the numerous deeds introduced, and some of them rather inartificial, and all by metes and bounds and measurements. However, it is clear enough that, on consideration of the entire record, there is substantial evidence in support of the judgment.

A jury was waived and the issues tried before the court, who gave several instructions requested by defendant, but refused the one marked defendant's No. 2. The instruction thus refused is as follows:

"The court declares the law to be that there is no authority shown in the plaintiff's chain of title for beginning at the southeast corner of section three, and measuring north twelve chains for the beginning point of said plaintiff's land."

It is argued that, as it appears the case really turned on the evidence of the county surveyor and the survey so recently made by him and that the surveyor chose as his point of commencement the southeast corner of section three and measured therefrom twelve chains north, from whence he surveyed to the westward, this instruction should have been given.

It is said that none of the deeds in plaintiff's chain of title designate such to be the starting point for the ascertainment of the line between his land and that of defendant, save the partition deed of date April 1, 1873, and that, at most, the parties assumed in that deed such as the point of commencement. It is to be conceded that no other deed in plaintiff's chain of title refers to the particular point mentioned as a point on the line between the two tracts of land, but it may not be said peremptorily as a matter of law, as the instruction requested suggests, that there is no authority shown in plaintiff's chain of title for beginning at that

point, when the several deeds are looked to in connection with the several surveys in evidence. Though it be that the surveyor, Ely, testified he measured from the corner of section three to the point called for in the deed referred to, it appears, too, that he had before him the field notes and data of prior surveys and that he made his measurements by these as well. Moreover, he had before him the survey and notes of the prior county surveyor, Wells, who surveyed a part of plaintiff's land on this line in 1886. This survey of the prior county surveyor was introduced in evidence by defendant and appears not to be challenged by other evidence introduced on his part, though an argument is directed against it in the brief. All of these surveys made by the county surveyor are official in character and, therefore, prima facie correct. [Carter v. Spracklin, 216 Mo. 116, 151 S. W. 451.] Moreover, the survey of Wells, the county surveyor, made in 1886, and so introduced by defendant, reveals certain measurements and distances which, when computed, tend to prove the subsequent survey made by Ely, beginning at the point mentioned, to be correct. We do not say such survey is correct, but the measurements it reveals tend to prove that Ely commenced his survey at a proper point. The case concedes that Ely utilized the notes and the measurements of the Wells survey, together with the partition deed, in ascertaining the point of beginning. This being true, it may not be said that there is nothing in the chain of title, when viewed in connection with the survey so introduced by defendant, tending to prove that it was proper to commence at a point twelve chains north of the section corner, for it appears Ely utilized the measurement and data theretofore made by his predecessor, Wells, in ascertaining the point of beginning. It is certain that the chain of title of both parties, appearing as it does in deeds purporting to convey lands described entirely by metes and bounds, must be

construed in connection with the surveys and measurements employed to ascertain and locate such metes and bounds and by these the dividing line.

In this view, the court did not err in refusing the instruction above set forth, and the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.