CITY OF MARSHFIELD, Plaintiff-
Respondent,

v.

Beulah HAGGARD, Defendant-Appellant.

No. 7646.

Springfield Court of Appeals.

Missouri.

July 20, 1957.

James H. Keet, Springfield, Homer D. Wampler, Jr., Springfield, and John Hosmer, Marshfield, of counsel, for defendant-appellant.

Roy C. Miller, Marshfield, for plaintiff-respondent.

**RUARK, Judge.**

This is a boundary line dispute in which the plaintiff-respondent city claims that the improvements of the defendant-appellant, who is owner of Block 5, Kentucky Row, Second Addition to Marshfield, intrude across and south of the north line of Burford Street. The city relies upon two surveys (Rader and Neuhart) which put the north line of the street farther north than it is put by the survey (of Reed) upon which the defendant relies. The contention of the city is that the Reed survey is inaccurate in its northern call for distance. The claims of the defendant can be summarized as a contention that neither of the city's surveys is shown to have a correct commencing point. The ultimate question is the validity and accuracy of these surveys, but our first problem is to locate the Second Addition to Marshfield in reference to some established point.

In the 1850's the original town of Marshfield was laid out, and shortly thereafter the First, Second and Third Additions were platted. The only instruments which show these are two plats, one showing the original town with Third Addition lying on its right, and the other setting forth First and Second Additions, with Second Addition on the right. These plats are old, faded, worn, and tattered, and portions of the "descriptions and explanations" are unreadable, but from what we can distinguish we can say that the original town was laid off in a rectangle. Its north line centered upon a point designated as the northeast corner of the Northwest Quarter of the Northwest Quarter, Section 10, and extended 60 rods in each direction along the section line. The central point above mentioned is designated on the plat as "Pt. of U. Survey." Three hundred seventy-six feet south and 45 feet east of this "Pt. of U. Survey" is fixed an arbitrary point, the center of a public square which is 420 feet on each side. Immediately east of the original town was laid Third Addition with its north line extending 20 rods east on the section line, thus, when taken with the east 60 rods of the original town, filling out the 80-rod 1,320-foot distance to reach the next quarter-quarter corner of a normal section.

Third Addition commences where original town leaves off, and the same named streets, of the same width, run through both tracts on parallel extensions, and the block lines likewise conform in position and measurement.

The parties assume that the plat showing Second Addition (wherein is located the property involved) does not definitely locate itself in reference to any section or subdivision corner, and this is the origin of some of our trouble. The plat simply states that it is "laid *on* the Southeast Quarter of the Southwest Quarter of Section Three." We shall follow with the assumption of the parties, although we do not find it necessary to hold that the location made by the above designation would not be sufficient to locate the south line of the addition on paper if that were the *only* available means of finding it.

●The plat of First and Second Additions, at its extreme bottom (south) edge, shows a row of numbered blocks which are located in reference to the public square and which comprise the north tier of blocks, with corresponding numbers shown in the plat of original town and Third Addition. Through these lots, and through both subdivisions, the same named streets extend in the same width and corresponding parallels. In other words, the two plats fit together and are tied by reference to the same designated blocks and streets, which are the connecting links. The result is a composite picture which shows the location of the "point of survey" on the south line of Second Addition and on the north line of Block 4 of original town, 45 feet west of the center of Marshall Avenue, which extends from the center of the public square in original town along the west side of Third Addition. (See opposite page.)

■ The plat so laid out on paper is prima facie evidence of the accurate location of the corners, boundaries, streets, and lots within the platted area. Patton on

Titles, § 68, p. 255; Dolphin v. Klann, 246 Mo. 477, 151 S.W. 956, 957.

In 1883 one Alexander Smith, county surveyor, made a survey for the purpose of marking out the then Marshfield city limits in a square mile, extending one-half mile in each direction from the center of the courthouse. This survey recognizes and commences with the "point of survey" shown on the plat of original town and located 376 feet north and 45 feet west of the courthouse. The plat filed with this survey likewise locates this point as being at the quarter-quarter section corner.

In 1937 county surveyor Gilbert Reed made a survey of property located in the block *north* of the defendant's property. In so doing he commenced at the center of the courthouse (in original town), ran east to intersection of Washington and Pitts streets, thence north *1,300* feet to his beginning point. Defendant, by measuring back southward the required distance shown by the plat, arrives at a point which she claims should be her south boundary. The two surveyors who were witnesses testified that the Reed survey is simply erroneous in the call for distance north as Reed wrote it on his survey notes; that the actual distance of this north course should be 1,326 feet. The plats in evidence show that this distance is, on paper, actually 1,326 feet. There was evidence that the addition is square. There is no evidence of any shortage or gain in distance between the plat as put on paper and as followed on the ground, and the Reed survey does not attempt to make any apportionment of gain or loss, as would have been required had such been true.[1] This being true, we must conclude that the Reed survey is in error.

But defendant is in possession, and plaintiff has the ultimate burden of proof. Consequently it still remains to be seen whether plaintiff's surveys are acceptable.

In 1953 county surveyor E. Rader ran a survey to locate this disputed boundary.

1. 8 Am.Jur., Boundaries, § 71, p. 796; City of Maysville v. Truex, 235 Mo. 619, 139 S.W. 390; Brewster v. Bulow, Mo., 296 S.W. 372.

His plat and survey notes show that he began at the northwest corner of Section 10 at "rock in place," and ran east 1,310.10 feet to the northeast corner of the Northwest Quarter of the Northwest Quarter, where he found "rock (with proper mark) in place." His plat shows this rock to be 45 feet west and 376 feet north of the center of the public square (the same location designated as "Pt. of U. Survey" in the plat of original town, and the same as that designated as "point of survey" in the Smith survey of 1883). He then ran east 1,323 feet, the distance required by the plat of Second Addition, to a point 20 feet south of Block 1 of Second Addition. (The original plat shows a 20-foot alley running along the south line of Second Addition and immediately north of original town.) There he "found iron bar in place." Thence he ran 720 feet north (the plat distance) to the northeast corner of Block 4 (which is also the south line of Burford Street), where he "found iron bar in place." Thus he determined his beginnnig point for his survey of the immediate area and from such survey found the north line of Burford Street, which he staked.

By stipulation of the parties, the court appointed one Neuhart to make an independent survey to locate the boundary line. The notes on his survey show the courses and distances from the intersection of Burford and Pitts streets and thence around the rectangle which comprises the disputed area. The notes do not show his course and distances in arriving at his beginning point at Pitts and Burford. The *plat* accompanying the Neuhart survey gives the same distances and monuments as are shown on the Rader survey. On such plat is designated the "¼ Sec. Stone," which is at the "point of survey" shown on the original plat, thence a drawn line 1,323 feet east to "iron pin," thence a drawn line 720 feet north to an iron pin at the south line of Burford Street.

■ Appellant's principal objection to both the Rader and Neuhart surveys is that neither of them started from a government corner. We do not think that such was necessary in this case. It is true that, in surveying and locating a subdivision of a section, reference must be had to some established government corner or a corner re-established in accordance with the statutes (Sections 60.290, 60.300 RSMo 1949, V.A.M.S.).[2] This is usually necessary in order to show the location of the subdivision of the section in relation to the section as a whole and in respect to its other portions, or to show the location of the section in reference to other sections. But in this case the parties are in dispute in regard to their *relative locations within the same plat*. Their quarrel would be the same no matter where in the section they were located. The city took the street as dedicated. The defendant took title to Block 5, Kentucky Row, Second Addition, by deed. In other words, both took under the plat. The acceptance of these interests "estops" them from questioning the relative locations as they were platted, and they cannot dispute the description and location of their property in reference to each other as platted and laid out. Land Titles and Land Law, McDermott's Deskbook, § 3.21–I, p. 62; City of Pacific v. Ryan, 325 Mo. 373, 28 S.W.2d 652, 655; City of Laddonia v. Day, 265 Mo. 383, 178 S.W. 741; see Mothershead v. Milfeld, Mo., 236 S.W.2d 343, 345. This being a dispute over the position of their properties in relation to each other within the platted addition, the location of the plat within the government section is immaterial, and government corners become important only if and as they serve as *monuments* from which to measure and establish the relative location on the ground, regardless of where such properties may lie in reference to section lines. If a city plat is located definitely in respect to any monument on the ground, that is a sufficient point to tie it to the face of the earth and

2. Landers v. Thompson, 356 Mo. 1169, 205 S.W.2d 544; Klinhart v. Mueller, Mo.,

166 S.W.2d 519; Cordell v. Sanders, 331 Mo. 84, 52 S.W.2d 834.

from which to establish the relative location of properties on the ground within the platted area. See City of Columbia **v.** Bright, 179 Mo. 441, 79 S.W. 151.[3]

 Furthermore, we think that the county surveyor Rader's survey *was* tied to a government corner. His survey showed that *"survey begins at the northwest corner of Section 10 Township 30 N Range 18 W 5th P.M. Rock in place."* His testimony in this respect was as follows:

"The 'Court: What was your beginning point on this survey?

"Witness: As I remember, the beginning point on this survey was commencing at the northwest corner of Section 10. That would be almost one-quarter of a mile west of this corner, here.

"The Court: Now, for the purpose of the record, was that corner—is that an established stone there?

"Witness: That corner is an established corner which was put there by the government.

"The Court: That is a government stone?

"Witness: Yes, sir."

The witness was not asked how or in what manner or by what method he determined or knew that this stone, "rock in place," was a government corner, although the cross-examination was rather extensive in other respects. No evidence was offered which tended in any manner to dispute his assertion, and the assertion of his survey, that the commencing point was a government corner stone. The act of the county survey-

or in the performance of his duty is an official act, and his survey, if it shows fair on its face, is prima facie (although not conclusive) evidence of its own correctness. Watson v. Matson, 183 Mo.App. 298, 166 S.W. 828; Morris v. Nowell, Mo., 180 S.W.2d 717; Chostner v. Schrock, Mo., 64 S.W.2d 664; see Gee v. Sherman, 221 Mo.App. 121, 293 S.W. 789. "Official surveys, like other records, deeds, and official acts, speak for themselves, and do not depend upon parol evidence to support them. They are made under official oath, and are presumably correct without they show upon their faces that they are incorrect, or that they were not made in pursuance to statutory requirements; but if a survey appears upon its face to be regular and correct, then it can only be impeached by showing that it is incorrect by evidence aliunde." Clark v. McAtee, 227 Mo. 152, 127 S.W. 37, 47.[4] The appellant argues that the Rader survey is not probative evidence because it did not show, and the county surveyor did not affirmatively testify, that this government corner was ascertained from the field notes of the government surveyors. It is trite to say that any survey must commence at a known point and the surveyor must ascertain and locate this point with certainty. We are also aware that the survey of town lots by a county surveyor must show the courses and distances to the points or lines from which he established the points or lines given in the survey.[5] But we know of no law or decision which requires the county surveyor to set forth on his survey the method or manner by which he located and identified the section corner where he commenced his survey, nor which holds that his official survey can be rejected for his failure to affirmatively show this process, unless the location of such corner is disputed by some

3. The survey failed in Schell v. City of Jefferson, 357 Mo. 1020, 212 S.W.2d 430, 434, because no one knew who put the bolt in place or how said point was established. It was not located in respect to the original plat.

4. In that case the survey failed because it was shown that the rock from which the surveyor began had been moved.

5. Section 60.340 RSMo 1949, V.A.M.S.; Pioneer Cooperage Co. v. Bland, 228 Mo. App. 994, 75 S.W.2d 431; Diers v. Peterson, 290 Mo. 249, 234 S.W. 792.

evidence or is the fact directly in issue.[6] Ordinarily, as in this case, the location of the government corner from which survey is commenced is a part of the *preliminary* to the survey proper and does not fall within the requirement as to the giving of courses and distances in the survey itself. The statutes (Sections 60.290, 60.300 RSMo 1949, V.A.M.S.) in reference to the reestablishment of lost corners (so often confused with the problem at hand) refer only to *lost* corners, not corners which can be located. Opperman v. La Brot, Mo.App., 283 S.W.2d 902; see 19 Mo.Law Review (1954), p. 253. A surveyor need only *find* his beginning point when making a survey.[7] And the corner can be located "either from the plat and field notes of the original survey, *or by any competent extrinsic evidence.*" (Emphasis ours.) Simpson v. Stewart, 281 Mo. 228, 219 S.W. 589, 590; see Gee v. Sherman, 221 Mo.App. 121, 293 S.W. 789. As to verification by field notes, it is common knowledge that the witness trees generally used by the original government surveyors in midwestern United States have in most instances been obliterated. It is also common knowledge, attested by the numerous decisions in this state, that the calls for distances in these first surveys are frequently inaccurate. This no doubt has contributed to the establishment of the rule that the stones set as monuments by these old surveyors control absolutely over the calls for distance in their field notes.[8] The *method* by which county surveyor Rader located and identified this government stone corner is not shown. He was not asked. He *may* have done so by reference to government field notes. On the other hand, he may have been compelled to resort to the running of transverse lines from other government corners. In this event, and if we follow appellant's theory to the ultimate, the surveyor would have been required to show the means by which he determined the location of the stones from which he transversed, in reference to *other* government stones, and so on *ad infinitum.* The county surveyor located and identified the government stone "in place." In the absence of anything to cast doubt upon this location, we will assume that he was correct.[9] In *this case* he is supported by the fact that his location ties in with the "point of survey," which was also designated as the quarter-quarter section corner.

The south perimeter line of Second Addition was located on the face of the earth by monuments. As to the "point of survey" monument, county surveyor Rader testified that such stone tied in with the government stone. He had "measured it more than once." Also:

"The Court: Now does that stone— that is, 376 feet north, and 45 feet west of the center of the courthouse. Now, since you have been county surveyor, have you ever measured that to see if the stone ties in with the center of the courthouse?

"Witness: I have.

"The Court: And does it?

"Witness: It absolutely does, sir.

"The Court: And on the other parts of the original town of Marshfield, and other additions, have you used that stone as a beginning point?

6. In Railsback v. Bowers, Mo., 257 S.W. 119, two different county surveyors had located two different corners, and such location was the real issue.

In Mothershead v. Milfeld, Mo., 236 S.W.2d 343, 346, the survey was attempted from monuments established in 1883 which were not identified with and "did not fit" the plat as it was laid out in 1857.

7. See George v. Jester, Mo., 255 S.W.2d 783; and Kincaid v. Dormey, 47 Mo. 337.

8. 11 C.J.S. Boundaries § 51e(1), p. 614; Johnson v. Buffalo School Dist. No. 1, 360 Mo. 962, 231 S.W.2d 693; Burnham's Heirs v. Hitt, 143 Mo. 414, 45 S.W. 368; Hartvedt v. Harpst, Mo., 173 S.W.2d 65.

9. See discussion in Grimes v. Armstrong, Mo., 304 S.W.2d 793.

"Witness: I have used the center of the courthouse, at different points, sometimes, and other times I used this other. I measured them, and I know they check exactly. * * *

"The Court: And do the other corners in Marshfield that you have surveyed from those places, do they check in with this stone that is north of the courthouse?

"Witness: That is right, what I have measured.

"The Court: How long have you been county surveyor?

"Witness: This is my eleventh year."

As to the iron bar which both Neuhart and Rader found at the southeast corner of Second Addition, the county surveyor testified that "right at my first surveying I found it there. In other surveys I have checked that iron pin to measure other land in Marshfield. I found that to be in correct position."

The deposition of surveyor Neuhart was taken by the *defendant*. He stated that he located the stone at the "point of survey" by making what we might call a random survey. He measured from the north line of the square, which, after construction, took on the character of a monument in its own right (see Gill's Treatise on Missouri Titles, vol. II, pp. 717–719; 8 Am.Jur., Boundaries, §§ 4 and 5, p. 748; Guitar v. St. Clair, 238 Mo. 617, 142 S.W. 291), calculated the distance to the center of the square, measured the proper distance north and west, and dug. There he exposed the stone, which he described as six to eight inches across the top, with a two-inch cross cut into it. From there he ran east 1,323 feet (the distance called for by the plat of Second Addition) and found the iron bar

concerning which Rader testified. Thence he ran 720 feet north (the plat distance) to his beginning point. He checked his survey by going back to the point of survey and running north 720 feet to the south line of Burford Street, thence east 1,323 feet to close his course. Such check would indicate that Burford Street was parallel with the south line of the addition and that the area lying between the street and south line was a perfect rectangle, as the original plat indicates.

■ Appellant contends that the survey of Neuhart was not admissible in evidence because it was given without data. It has been held that the testimony of a surveyor is of no value and therefore not admissible except in connection with the data from which he surveys (Barnhart v. Ripka, Mo. App., 297 S.W.2d 787, and cases cited in footnote 10 at page 792 thereof). But the examination was in connection with his survey and plat which had been filed in court. It was the defendant who took his deposition and examined him extensively in regard to the location of the point of survey stone and his courses and distances. Defendant can hardly complain of the inadmissibility of that which she herself produced in evidence. Neuhart's testimony makes it clear that the courses and distances which he marked on the plat accompanying his survey *are* the data of courses and distances which he actually ran. Defendant therefore qualified the survey. In any event, Neuhart's testimony would have probative value in the location and identification of the stone and iron bar as visible monuments. Ancient landmarks and monuments are important in cases such as this, and the courts have been rather liberal in their acceptance of testimony in regard to such.[10]

We think the location of the commencing point was established on paper and that it

10. To illustrate, see 8 Am.Jur., Boundaries, § 93, p. 812; 11 C.J.S. Boundaries § 108, p. 703; Whitwell v. Spiker, 238 Mo. 629, 142 S.W. 248; City of Maysville v. Truex, 235 Mo. 619, 139 S.W. 390; City of Warsaw v. Swearngin, Mo., 295 S.W.2d 174; Dolphin v. Klann, 246 Mo. 477, 151 S.W. 956(3); Artz v. Bannan, Mo.App., 71 S.W.2d 795.

was located on the ground in reference to the center of the public square, the city streets, the stone at the "point of survey," and the iron bar at the southeast corner of the addition.

We conclude that the judgment must be affirmed. It is our opinion that such judgment adequately describes the land by metes and bounds and by declaring the boundary line to be as staked by surveyors Rader and Neuhart. The judgment [subparagraph 4(2)] also locates the boundary line in respect to defendant's privy. Such structures are not always permanent in position and do not make good monuments. The judgment will be modified by striking out that subparagraph and affirmed in all other respects.

McDOWELL, P. J., and STONE, J., concur.