**Alexander MOSCHALE and Grace L. Moschale, his wife, Plaintiffs-Respondents,**

v.

**Edwin MOCK and Mary Alice Mock, his wife, Defendants-Appellants.**

**No. 11109.**

Missouri Court of Appeals, Southern District, Division Three.

Dec. 12, 1979.

Donald E. Lamb, Centerville, for plaintiffs-respondents.

Robert M. Ramshur, Randall L. Head, Ironton, for defendants-appellants.

GREENE, Judge.

This case is an action for injunction brought by plaintiffs in the circuit court of Iron County in which plaintiffs sought to restrain and enjoin defendants from permitting their livestock to run at large upon a private road used by plaintiffs for ingress and egress to their property. Plaintiffs also requested that defendants by enjoined from interfering with plaintiffs' right to possession and use of the road, and that they be ordered to remove certain obstructions in the form of gates and fences from the road. The petition was in two counts. The first count alleged absolute ownership by plaintiffs of the road in question, while count two alleged that plaintiffs had a possessory interest, in the form of a permanent easement, in the private road.

After hearing the evidence, the trial court entered a judgment for plaintiffs on both counts. The court found that plaintiffs were entitled to ingress and egress to their property along the private road in question, ordered defendants to remove all gates and barriers from the road, and permanently enjoin them from allowing their livestock to run at large upon the road. Defendants appeal.

Defendants raise several points for review, which are that the trial court erred in granting judgment for plaintiffs because 1) the petition failed to state a claim upon which relief can be granted in that plaintiffs had an adequate remedy at law, 2) the petition is indefinite and the meaning thereof is unclear, 3) the judgment is void in that it fails to describe the real estate with certainty, 4) the testimony of witness Monroe Brooks, that the lands owned by plaintiffs and defendants were at one time owned by a common source, violated the best evidence rule, 5) exhibits "A" and "B"

did not establish the existence of a common grantor, 6) there was no proper foundation laid for the testimony of the surveyor, Ron Murphy, and 7) the gates and barriers erected by defendants did not unreasonably interfere with plaintiffs' use of the road, and the judgment ordering their removal was, therefore, unreasonable.

Appellate review of the trial court's judgment in this case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's judgment will not be reversed unless 1) there is no substantial evidence to support it, 2) it is against the weight of the evidence, 3) it erroneously declares the law, or 4) it erroneously applies the law.

In their first point, defendants allege that Counts I and II of plaintiffs' amended petition fail to state a claim upon which relief can be granted. Defendants contend that under either count, plaintiffs have an adequate remedy at law and that, therefore, the injunctive relief sought by plaintiffs is inappropriate. Plaintiffs' Counts I and II seek injunctive relief under two different theories. Neither count asks the trial court for findings of fact or conclusions of law. The trial court, in rendering its judgment, made none.

Under Count I, plaintiffs alleged that they owned, in fee simple, the road in question here and that defendants were allowing their cattle to run upon the road in violation of § 270.010, RSMo 1969. Contrary to defendants' argument, § 270.010 does not provide an adequate remedy at law such as to bar injunctive relief in this case. Although § 270.010 does allow the recovery of damages for injuries sustained by wandering livestock, the injury suffered here by plaintiffs is not easily repairable by money damages. The injury sustained here is in the nature of a continuing trespass. For plaintiffs to bring either a suit for money damages under § 270.010 or a suit for ejectment under § 524.010 et seq., every time that defendants' cattle interfered with plaintiffs' use and enjoyment of the roadway, would require a multiplicity of suits and place an undue burden upon plaintiffs.

In such a case, injunctive relief is a proper remedy. *Schroeder v. Ziegelman*, 443 S.W.2d 16, 18 (Mo.App.1969); *State ex rel. Janus v. Ferriss*, 344 S.W.2d 656, 660 (Mo. App.1961).

Under Count II, plaintiffs allege, in the alternative, that they own an easement of ingress and egress along the road in question here and that defendants are interfering with plaintiffs' use and enjoyment of that easement. Injunctive relief is available to prevent interference with or infringement of rights acquired by an easement. *Kelly v. Schmelz*, 439 S.W.2d 211, 213 (Mo.App.1969); *Kansas City Power & Light Company v. Riss*, 319 S.W.2d 262, 265 (Mo.App.1958). Point one is, therefore, denied.

Defendants' second point also alleges that plaintiffs' amended petition fails to state a claim upon which relief can be granted in that it is indefinite and unclear. The objection that a petition wholly fails to state a cause of action may be offered at any stage of the proceeding, but, to be available after verdict, it must go to the entire sufficiency of the petition to state a cause of action and cannot avail where it states a cause of action which is merely indefinite and imperfect in some of its averments. *State ex rel. Gardner v. Webber*, 177 Mo.App. 60, 64, 164 S.W. 184, 186 (1914). Defendants did not challenge plaintiffs' petition by a motion to make more definite and certain. Any indefiniteness in the amended petition was cured by the court's verdict. *Phillips v. East St. Louis & S. Ry. Co.*, 226 S.W. 863, 865 (Mo. 1920). Point two is denied.

In their third point, defendants allege that the trial court's judgment is void because it does not describe, with certainty, the roadway which is the subject of this litigation. Plaintiffs submitted, as evidence, two warranty deeds, exhibits A and B, which grant them the right to use the roadway here in question. The descriptions of the roadway, however, although essentially the same, are not identical. Yet, there is but one road running across defend-

ants' land. Since the location of the roadway was not the primary disputed matter in this case, the trial court's description was not required to be as definite as it might be where exact location was the ultimate issue. The descriptions contained in exhibits A and B, and adopted by the trial court, were sufficient to allow the parties to find and identify the roadway referred to in the court's judgment. *Huter v. Birk*, 510 S.W.2d 177, 182–183 (Mo.1974); *Allen v. Smith*, 375 S.W.2d 874, 883 (Mo.App.1964). Point three is denied.

■ Defendants' fourth point is divided into two parts. The first part alleges, as does point five which will also be decided here, that it was error for the trial court to admit exhibits A and B into evidence because they were offered to prove that respondents were the owners of a private roadway by expressed grant and there was no evidence of a common grantor. Defendants cite no authority, and we find none, which would require evidence of a common grantor to make an easement by express grant valid. Nor do defendants explain why they have not cited any authority. Defendants' arguments, absent authority, are not persuasive. *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978).

■ The second part of defendants' fourth point alleges that the trial court violated the best evidence rule in allowing Monroe Brooks to testify as to the common ownership of the land now owned by defendants and plaintiffs because that information could best be established by an abstract of title, which was available to plaintiffs but not introduced. The best evidence rule does not come into play simply because a witness is testifying to facts which are also contained in a writing. It is activated when *the terms of a writing are in dispute.* Then, the original document is the best evidence of the terms of the writing. *Yeager v. Whittels*, 517 S.W.2d 457, 466 (Mo.App.1974). Brooks was not testifying as to the terms of a deed of common ownership, he was testifying as to a fact, made through personal observation, which could also be corroborated through a deed of com-

mon ownership. The best evidence rule is not applicable in this situation. Points four and five are denied.

In their sixth point, defendants allege that it was error for the trial court to allow surveyor Ron Murphy to testify that the private roadway described in Plaintiffs' Exhibit B was the same road which was physically located on the land in question, for the reason that plaintiffs failed to introduce sufficient evidence to show that Murphy started his survey from an established government corner, and, therefore, there was no proper foundation for Murphy's testimony.

Plaintiffs called Ron Murphy, a registered land surveyor, to testify concerning a survey which he had performed at their request. On direct examination, Murphy was asked, "Did you start from an established government corner in performing this survey?" He replied, "No, we did not. We tied to a corner on the survey which Mr. Buel Brewer had." At this point, defendants' attorney objected to any further testimony by Murphy on the grounds that the survey had not been shown to have started from an established government corner. The motion was sustained by the trial court. After some brief discussion between the attorneys and the trial judge, Murphy was excused and Buel Brewer was called to the stand.

Brewer was also a registered land surveyor. He had made a survey, which Murphy tied into, for the former owners of the land now owned by defendants. While testifying about his survey, Brewer was interrupted by defendants' attorney. The following exchange ensued.

"MR. RAMSHUR: Judge, I would like to make an objection at this point. May I ask a question for the purpose of that objection?

THE COURT: Sure.

MR. RAMSHUR: Did you tie the survey, of what you have been testifying here, into an original government corner?

THE WITNESS: Yes.

\*       \*       \*       \*       \*       \*

MR. RAMSHUR: What corner did you tie this legal description into?

THE WITNESS: The corner that I tied it into was the survey that I had previously made to the south. And I made a platted subdivision—I forget the name of the subdivision, but at the time I tied to a couple of corners. Previous to that I tied to a corner to the west, I believe it was the section corner of one and two on the range line which is, which the county surveyor, around 1900, had rewitnessed and stated that he set from the original witness tree. And prior, not exactly on this survey, but from some of my records from these, I tied to these original corners. I mean, when I made this survey.

MR. RAMSHUR: The corners that you tied it into, were those the nearest section corner to the property?

THE WITNESS: The one to the south would have been, yes.

MR. RAMSHUR: And you tied them in, in the course of conducting this particular survey that you are testifying about?

THE WITNESS: Yes, I went back to this other survey and run the lines up through to the other corner of this prior work that I had done in previous years.

MR. RAMSHUR: All right. Thank you."

Defendants made no objection to this testimony. On cross-examination, defendants' attorney inquired further.

"Q. Are you testifying today that the corner which you tied this survey into was the southwest corner of this section?

A. I believe that is correct, but this southwest corner had also been tied to some others on the original evidence, and there is some original evidence, and there is also some original evidence in the west of this that I tied across to it.

Q. Are you talking about re-establishing those corners or are you talking about those corners as found on the ground by original notice?

A. As the lines as set on this survey, to the best of my knowledge, are set accurate from the original surveys. Part of them would have been re-established, but part of them are tied to record corners. From a couple of different directions. And there was also evidence of the old stump of the lime tree which was called in the notes on the south side of the section."

Upon the completion of his testimony, Brewer was excused, and Murphy was recalled. Plaintiffs' attorney then continued his examination of Murphy. Defendants did not renew their objection to Murphy's testimony, or challenge the adequacy of the foundation for such testimony in any other way. Nor did defendants object when Murphy was asked, "Did you base your own survey work on the work that was done by Mr. Brewer?," to which he replied, "Yes. We found some of the points as set by Mr. Brewer, verified those and used those points." At the conclusion of Murphy's testimony, Plaintiffs' Exhibit E, Brewer's field sketch showing the road in question, was admitted into evidence without objection. Defendants at no time moved to strike any of the testimony related above.

By failing to specifically and timely object to the testimony of Brewer, and the subsequent testimony of Murphy, defendants have not preserved anything for review. *Federal Deposit Insurance Corp. v. Crimson*, 513 S.W.2d 305, 307 (Mo.1974); *Stafford v. Lyon*, 413 S.W.2d 495, 498 (Mo. 1967). Nor was it plain error to admit the testimony. Looking at the evidence, in the light most favorable to plaintiffs, it was clearly sufficient to show that Brewer, and Murphy, by his tie-in to Brewer's survey, started their surveys from established government corners. The evidence conclusively established that Brewer's survey began from a government corner. There is no reason why Murphy could not rely on it in beginning his own survey. See *Watson v. Matson*, 183 Mo.App. 298, 302–303, 166 S.W. 828, 829–830 (1914). Also, § 60.330, RSMo

1969,[1] although apparently never cited or construed before, would seem to allow Murphy to rely on any corners legally established by Brewer. Murphy's survey was sufficiently tied to an established government corner such that his testimony concerning it was admissible. Defendants' sixth point is denied.

Defendants' seventh point alleges that the trial court erred in ordering defendants to remove "any and all gates and barriers" from the road because all the gates and barriers did not unreasonably interfere with plaintiffs' use of the road. Where the exclusion of the erection of a fence or gate across a right-of-way is not specifically set out in a grant or easement, courts must then consider the following factors: 1) the purpose for which the grant was made; 2) the intention of the parties as gleaned from the circumstances surrounding the grant; 3) the nature and situation of the property; and, 4) the manner in which the easement has been used. *Teal v. Lee*, 506 S.W.2d 492, 497 (Mo.App.1974). Having reviewed the record, we find that there was substantial evidence for the trial court, applying the *Teal* standard, to rule as it did and that the trial court's judgment was not against the weight of the evidence. Point seven is denied.

The judgment is affirmed.

MAUS and PREWITT, JJ., concur.

BILLINGS, P. J., concurs in result.

---

1. Section 60.330 RSMo 1969: "This chapter shall in nowise be construed either to affect the legality of surveys heretofore legally made and recorded, or to prevent surveyors from taking advantage of any corners previously legally established."