DICE, Appellant, v. HAMILTON.

Division One, November 25, 1903.

1. **Limitations:** AGAINST STATE. The statute of 1865 declaring that "nothing contained in any statute of limitation shall extend to . . . any lands belonging to the State," went into effect on August 1, 1866, and was prospective only in its operation. Prior thereto the statute of limitations ran against the State, and hence a defendant, who had entered into possession of school lands prior to that time and held such continuous possession for the statutory period before the State issued to him his patent, acquired the title by limitation.

2. **Evidence:** ERROR INVITED BY APPELLANT. Appellant can not complain of the error of the trial court in admitting evidence invited by himelf.

3. ———: ———: APPELLATE PRACTICE. Cases must be tried in the appellate court upon the same theory upon which they were tried in the courts below. If appellant at the trial stated that a bill of exceptions would be admissible in evidence if respondent's attorney would swear that it contained respondent's testimony at the former trial, and thereupon said attorney did so swear, appellant can not on appeal urge that the bill was admissible only for the purpose of refreshing respondent's memory, if no such objection was urged at the trial.

Appeal from DeKalb Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*J. F. Harwood* for appellant.

This land was never fenced by anyone until about 1867 or 1868. The statute was then in force at the time the land was fenced, and the defendant claims title by actual possession through his grantors, and not by color of title; for his deeds do not cover the land in controversy. So before any actual possession of this strip

of land had been taken, the statute had been enacted. G. S. 1865, sec. 7, p. 746. Defendant's forty acres of land lies immediately west of plaintiff's forty acres, and defendant insists upon crossing the line running north and south between the two forties, and also a private road laid out on such line, and occupying and cultivating the strip in controversy covered by plaintiff's patent. Plaintiff claims this right by virtue of the statute of limitations. He does not claim to have any color of title to it, but claims solely by possession. David Whitaker, one of the defendant's witnesses, testifies: "I bought the Hamilton forty in 1865, it was land laying out when I bought it, half of it fenced, and the other half wasn't. The west half had been fenced north and south, and the rest next to Mr. Dice was laying out. I put the first post fence there."

*Hewitt & Blair* for respondent.

(1) The statute ran against the State where the right of entry, as in this case, accrued prior to the taking effect of the General Statutes of 1865, i. e., August 1, 1866. The Act of 1865 was prospective in its operation. Directors v. Georges, 50 Mo. 196; Mississippi Co. v. Vowles, 101 Mo. 228; Hendrickson v. Grable, 157 Mo. 48. (2) The facts, on evidence pro and con, having been found against plaintiff in error by the trial court, this court will not disturb that finding. Hendrickson v. Grable, supra.

MARSHALL, J.—This is an action in ejectment for a triangular strip of land lying on the northwest quarter of the northeast quarter of section 16, township 58, range 30, in DeKalb county, Missouri, and described in the petition as follows: "Commencing at a point twenty-eight feet east of the northwest corner of said forty-acre tract, and running thence in a southwesterly direction to the southwest corner of said forty-acre tract."

Dice v. Hamilton.

The petition is in the usual form, the ouster being laid as of December 2, 1897. The answer is a general denial, but the real defense is title by limitation. The trial court rendered judgment for the defendant, and plaintiff appealed.

The controversy will be more readily comprehended by an examination of the following plat:

EXPLANATION:
    Division line between the northwest quarter of the northeast quarter and the northeast quarter of the northwest quarter is indicated by lines from letters A to C.
    Land described in petition indicated by triangle ABC.
    Private road twenty feet wide, lying ten feet on each side of subdivisional line between land of plaintiff and defendant, indicated by lines DE and FG.
    Land really in dispute is the triangle BHF.

All the land lies in section 16, township 58, range 30, DeKalb county. The plaintiff owns the northwest quarter of the northeast quarter of section 16, and the defendant owns the northeast quarter of the northwest quarter of section 16. Mrs. Martha Belk owns the forty acres that lie south of the defendant's forty, being the southeast quarter of the northwest quarter of section 16.

Although the petition claims the triangle indicated on the plat by the letters ABC, and describes it as having a front of twenty-eight feet on the north, along the line of the public road, the fact is that in 1892, Mrs. Belk, in order to obtain access to her land from the public road, caused the county court to condemn a private road twenty feet wide, from the northeast corner of her land, to the public road running along the north line of section 16, whereby ten feet were taken off of the land of each the plaintiff and defendant, the subdivisional line between the lands of the plaintiff and defendant being the center of the private road. [Belk v. Hamilton, 130 Mo 292.] The private road is indicated on the plat by the letters DEFG. In consequence of all which the land really in dispute in this case is the triangle indicated by the letters BHF, and is eighteen feet on the north and running southwesterly to zero at the point H.

The plaintiff claims title to the land as being a part of the northwest quarter of the northeast quarter of section 16, and shows that he acquired title to said forty acres by assignment from Samuel C. Rodgers, dated April 2, 1860, and that Rodgers was himself the assignee of Michael A. McCartney, who it is claimed originally purchased the land, under the laws of this State. The land was originally school land, and was sold to McCartney for the sum of two dollars per acre, but the date of such sale is not disclosed by the record. McCartney sold to Rodgers, but the date of sale and the price does not appear. Rodgers sold to the plaintiff, in 1860, for $327.50, but the patent of the State was never

issued until November 15, 1897, and then it was granted to the plaintiff, "assignee of Samuel Rodgers, assignee of Michael A. McCartney."

The defendant has no title to the land in controversy, except such as rests upon the statute of limitations. The defendant derives his title to his forty, by a warranty deed from W. W. Curtis, dated March 4, 1882, and has been in possession thereof ever since. Curtis acquired title from John E. Thomas by warranty deed dated January 15, 1881. Thomas acquired title from David Whittaker by warranty deed dated November 8, 1878. Whittaker acquired title from W. C. Moore, by warranty deed dated July 17, 1865. Moore acquired title by warranty deed from William Munson, dated March 2, 1864. Munson acquired title from Thomas Reed by warranty deed dated October 6, 1895 (?), and Thomas Reed acquired title by a patent from the State dated April 24, 1874. These dates become important by reason of the contentions of the parties hereto.

The evidence shows that Moore went into possession of what he supposed to be his forty, in 1864; and that the plaintiff went into possession of what he supposed to be his forty, in 1860. Neither party seems to have had a very clear idea of where the division line between their lands ran. There were no government stones set showing such divisional lines. There is no dispute that the plaintiff has never been in possession of the triangular strip in controversy, but that the defendant has been in possession thereof ever since he purchased from Curtis in 1882, claiming it as a part of his forty, and that Whittaker, his mesne grantor, was in possession of it, claiming it also as a part of said forty from August 7, 1865, until he sold it to Thomas in 1878. In short, the evidence shows that the defendant and those under whom he claims title have been in possession of the strip in controversy, claiming it to be a part of the northeast quarter of the northwest quarter

of section 16, since, at least, as early as March 2, 1864, when Moore purchased from Munson. Various surveys were made to establish the division line between the land of the plaintiff and the defendant, but each survey located the line at a different place—some showed that the strip was a part of the land of the plaintiff, and some showed that it was a part of the land of the defendant. Neither party would accept the survey made at the instance of the other. Sometime in 1888 this plaintiff brought a suit in ejectment against this defendant for the possession of said strip, and upon a trial of that case, the judgment went in favor of the defendant.

When Whittaker purchased from Moore, in 1865, he had a survey made of the land, which showed this strip to be a part of the northeast quarter of the northwest quarter of section 16, and he had it fenced, and cultivated it, and claimed it, and it has been cultivated and claimed in the same manner by his grantees ever since. He and they claimed up to the fence, on the one side, and the plaintiff likewise claimed to the fence on the other side. The evidence excludes the idea that the parties claimed only to the fence supposing it to be the true line but without intending to set up any claim to it unless it was within the true line. There seems to have been no doubt in the mind of either party that the land belonged to the defendant until shortly before 1888 when the plaintiff had a survey made which showed it to be a part of his forty, and he then brought the prior ejectment suit above noted.

Upon the trial of this case the defendant offered a transcript of what purported to be the testimony of the plaintiff at the trial of the prior case. It was not made a part of the record in that case by a bill of exceptions. Thereupon the record herein shows that the following proceedings were had:

"By Court: It is not before me in a proper way. You would have to show the facts.

"By Plaintiff: If Mr. Hewitt would go on the stand and swear to what he says that would be the best.

"By Court: He says that he remembers it and one is as good as the other.

"By Plaintiff: If Mr. Hewitt swears that is the testimony, that of course makes it admissible.

"By Defendant: Mr. Dice says his father testified. Before this was tried the first time we made a motion for costs and thought that this man was the plaintiff. He never said he was not and to-day is the first time we ever knew he was not the plaintiff in this case.

"Defendant offers a demurrer to the evidence.

"Demurrer overruled by the court.

"R. A. Hewitt, Jr., being sworn, testifies as follows: I was attorney for Mr. Hamilton in the trial of the cause in which this plaintiff was plaintiff and this defendant was defendant concerning this same tract of land October, 1888, and the transcript of the evidence of plaintiff, John W. Dice, which I now offer in evidence, is a true and correct transcript of the evidence of said John W. Dice as given by him in the trial of said cause.

"By Court: It will be admitted in evidence; read it, for which see page 3 of the written portion of this bill of exceptions, to and including page 11. To which evidence the plaintiff at the time objected as being irrelevant and not competent under the issues made by the petition and answer. The court overruled the objection, and the plaintiff excepted at the time."

The evidence shows that the plaintiff is over eighty years old, and that he was unable to attend the trial of this case.

The record then shows that the plaintiff also objected to the reading of the said testimony, because while it purported to be a draft of a bill of exceptions, it had never been signed, sealed or made a part of the record, and because the plaintiff could be called and examined, and that the defendant, "for the purpose of making such written matter competent," called Robert A.

Hewitt, who testified as above set forth, and that thereupon the court overruled the objection and admitted the testimony, and the plaintiff excepted.

The plaintiff then asked and the court refused to give the following instructions:

"1.    The court declares the law to be that under the evidence, the statutes of limitation of this State can not prevail to destroy plaintiff's title to, and right of possession of, the land sued for, and judgment must be for the plaintiff.

"2.    The court will exclude all that part of the evidence read from the pretended bill of exceptions, for the reason that the same was never allowed and made a record of court."

The case was tried before the court, a jury being waived, and judgment was rendered for the defendant, and the plaintiff appealed.

I.

The first contention of the plaintiff is, that the title to the land in controversy was vested in the State of Missouri in trust for school purposes until November 15, 1897, when the patent was issued to the plaintiff, as assignee of Rodgers, who was the assignee of McCartney, and that ever since August 1, 1866, when the General Statutes of 1865 went into effect, it has been provided by law that, "nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this State," and therefore the defendant could not acquire title by adverse possession, and hence the court erred in refusing the plaintiff's first instruction.

It will be observed that the plaintiff shows that he has been in possession of his forty ever since 1860, and that the defendant and his grantors have been in possession of the other forty ever since March 2, 1864, and

that the strip in controversy has been fenced and cultivated by the defendant and those under whom he claims ever since Whittaker fenced it in 1865, and that he and they have asserted title thereto since that date, and that their right and title were not questioned by anyone until the plaintiff had a survey of the land made about a year before he brought the prior ejectment suit in 1888.

Prior to the adoption of the statutes of 1865, containing the provision above quoted, the statute of limitations ran against the government as well as against the citizen. [Conn. Mut. Life Ins. Co. v. St. Louis, 98 Mo. l. c. 424, and cas. cit.]

The statute invoked by the plaintiff took effect on August 1, 1866, and was prospective only in its operation. Prior thereto the statute of limitations ran against the State. The defendant and those under whom he claims went into actual, adverse possession, certainly as early as July, 1865, and have been in continuous, open, notorious, adverse possession ever since, claiming the land as their own. Such possession having begun prior to the adoption of the statutory provisions relied upon, the right of action accrued to the State in 1865, and the statute of limitations began to run in the defendant's favor from that date, and the enactment of the provision relied upon by the plaintiff did not interrupt or stop the running of the statute. This action was begun in 1898. The defendant had therefore been in such possession for some thirty-three years when this suit was commenced, and, hence, had acquired title by limitation against the claim of the plaintiff under the State. There was no error, therefore, in the refusal of the plaintiff's first instruction.

## II.

The second error assigned is the action of the trial court in permitting the defendant to read the transcript

of the testimony of the plaintiff given upon the trial of the former ejectment suit in 1888.

When the transcript of that evidence was offered, the court of its own motion decided that it was not properly before the court. The plaintiff said that if the defendant's attorney would swear "that it is the testimony, that of course makes it admissible." The defendant's attorney upon that suggestion was sworn and testified that he was the defendant's attorney upon the trial of the former case, and that "the transcript of the evidence of plaintiff, John W. Dice, which I now offer in evidence, is a true and correct transcript of the evidence of said John W. Dice as given by him in the trial of said cause." The court then admitted the evidence.

It is true, as the plaintiff contends, that the transcript does not appear to have become a bill of exceptions or a part of the record of the former case, and therefore it does not prove itself. But when the court of its own motion was about to exclude it, the plaintiff said that if the defendant's attorney would swear that it was the testimony of the plaintiff on the former trial, "that of course makes it admissible." The defendant's attorney acted upon this suggestion, and swore as required, and the court then admitted the evidence.

It is thus clear that if the court committed error in this regard it was error invited by the plaintiff, and therefore the plaintiff can not be heard to complain. [Harper v. Morse, 114 Mo. l. c. 323; Johnson-Brinkman Co. v. Bank, 116 Mo. l. c. 569.]

It is argued, however, that while the transcript might be used to refresh the memory of the witness who made it, it was inadmissible as evidence itself. Of this it is only necessary to say that no such objection was urged in the trial court, and that court can not be convicted of error with respect to any matter not called to its attention. Cases must be tried in appellate courts upon the same theory upon which they were tried in the courts below. [Trigg v. Taylor, 27 Mo. 245; Walker

v. Owen, 79 Mo. 563; Hart v. Leete, 104 Mo. 315; Minton v. Steele, 125 Mo. 181.]

There was, therefore, no error in refusing the plaintiff's second instruction.

Aside, from all this, however, the evidence so complained of added nothing essential to the defendant's case, for the reason that substantially every fact so testified to was also shown by the testimony of other witnesses, and was practically the same as the testimony adduced by the plaintiff upon this trial. The trial was had before the court, and it does not appear how the rights of the plaintiff could have been prejudiced by the admission of such evidence.

The judgment of the circuit court is affirmed. All concur.