CITY OF PACIFIC, Appellant, v. WILLIAM RYAN.—28 S. W. (2d) 652.

Division One, June 3, 1930.

374

*James Booth* and *Virginia J. Booth* for appellant.

*W. J. Cole* and *T. P. Hukriede* for respondent.

LINDSAY, C.—This is an action in ejectment brought against the defendant William Ryan, by the city of Pacific, a city of the fourth class. The petition was filed February 1, 1921, and is in conventional form. The ouster was laid as of January 1, 1921.

The land sought to be recovered is a strip of ground about eight feet wide, extending southward from Union Street along the east ends of lots 1 and 2 of Block 27 of Blumenthal's Addition to said city. According to the plat of Blumenthal's Addition, a strip of ground fifteen feet in width from east to west was dedicated to public use as an alley, extending from Union Street south along the east ends of lots 1 and 2 of Block 27 in said addition. Blumenthal's Addition was laid out in 1856, and the plat of the addition showing the location and dimensions of the various lots and the dedication of the streets and alleys therein included, was filed for record in the Recorder's office of Franklin County on February 20, 1856. As platted, lots 1 and 2 of Block 27 are 115 feet in depth from east to west, and each is 50 feet in width from north to south. The ground in dispute is the strip in possession of defendant, which lies between the west line of the alley as platted, and the east line of lots 1 and 2 as platted. Lot 1 lies north of lot 2. They are bounded on the west by Adelaide Avenue, on the north by Union Street, and on the east by the alley in question. South of lot 2 is a parcel of ground not numbered on the plat, and bounded on the west by Adelaide Avenue, on the north by the south line of lot 2, on the east by the alley in question, and on the south by a street which, according to the testimony, is called St. Louis Street. This parcel of ground is mentioned frequently in the testimony in connection with the location of an old building formerly thereon, and with the location of the fire-house of the city, which is on said parcel of ground at or near the intersection of the west line of the alley with the north line of St. Louis Street.

The answer of the defendant, after a general denial, alleged title of defendant to the strip in controversy upon the ground that he and those under whom he claimed title, had been in the open, notorious, peaceable, continuous and adverse possession of the same, claiming title thereto, for more than thirty years before the commencement of the action. Defendant next pleaded that the land in controversy had never been used as a public alley by the city or its inhabitants, but had been occupied by the defendant and those under whom he claimed title, for more than thirty years; that defendant had erected upon said strip valuable and expensive improvements, used in connection with his barn and other improvements for more than thirty years; that defendant, during the entire period of his occupancy, claimed to own the same as his absolute property adversely to plaintiff and all others; that his occupancy of said strip had been with the knowledge, consent and approval of the plaintiff; that plaintiff by its own acts invited him to expend large sums of money in erecting barns with concrete floors on the property which would be rendered useless and valueless if he be denied the use of said strip of ground; that if said strip of land was ever dedicated to public use as an alley, it had been abandoned by plaintiff as such alley, and that plaintiff was estopped to claim title to said strip of land as a public alley or for any other purpose, and estopped from interfering with defendant's occupancy.

Upon the trial the plaintiff introduced in evidence the plat of Blumenthal's Addition which was duly recorded on February 20, 1856. Plaintiff also put in evidence a warranty deed dated July 20, 1921, from William B. Langenbacher and wife to defendant William Ryan, conveying lots 1 and 2 in Block 27 in said addition, according to the plat of said addition, and as showing the plat was adopted as a part of said deed. Defendant in open court admitted possession of the ground in dispute.

The defendant called as a witness defendant's immediate grantor, William B. Langenbacher, who testified that he acquired the title to lots 1 and 2 of Block 27 in the year 1899 from one Whitsett, and that at that time the part of the alley in controversy was inclosed by a fence belonging to Whitsett. Langenbacher testified that Whitsett fenced the alley, the part in dispute, thirty-five or forty years before the trial. He also testified that the lots were not enclosed prior to the time Whitsett bought them. Defendant also introduced testimony to the effect that in the time of the Civil War there was a store building located on the alley in question. According to this testimony the store building was on the parcel of ground mentioned as lying south of defendant's property and at the point, where the alley was not located, on the west line of the alley as the alley is platted, but upon a line coinciding

with, or an extension of, the east line of lots 1 and 2, as those lots are occupied by defendant. No part of this store building stood upon lots 1 and 2. There was other testimony as to the existence and location of the store building mentioned, during the time of the Civil War, in 1863 and 1864. Defendant also introduced testimony that at the time Langenbacher bought lots 1 and 2 there was an ice-house, an old building, situated mostly on lot 2, and a little of it on lot 1, and that the east line of this ice-house was on the line which now constitutes the east line of the property, as it is now occupied, by the defendant. The testimony was to the effect that this ice-house was there as far back as about fifty years before the trial. Langenbacher testified that he tore down the ice-house after he bought lots 1 and 2 from Whitsett. He built a barn on the property, and also a shed with concrete floors, and this shed extends over the strip in dispute.

Other portions of the evidence will be mentioned as required in the discussion of the issues to be determined. The court refused the declarations of law offered by plaintiff as to adverse possession and estoppel, and in rendering judgment for defendant, made findings of fact which followed the allegations of defendant's answer on both adverse possession and estoppel.

We first take up defendant's claim of title by adverse possession. Plaintiff's evidence showed the record title to the alley was in the city. In that situation, the action being ejectment, the defendant took up the burden of showing that he had acquired title by adverse possession and limitation; and, if there is evidence to sustain the finding of the court upon that issue, we are bound by it. [City of St. Louis v. St. Louis, I. M. & S. Ry. Co., 248 Mo. 10.]

Upon the question of adverse possession, counsel for plaintiff rely upon the provisions set forth in Section 1314, Revised Statutes 1919, as applied to the evidence in this case. Counsel for defendant say that statute has no application under the evidence in the case. Section 1314 is as follows: "Nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this state." The act embodying this section went into effect on August 1, 1866, as a part of the General Statutes of 1865. To make that statute inapplicable in this case, it was necessary that defendant show that he was successor in title and possession of someone who, under claim of ownership, took and held possession as against the city before August 1, 1866. A possession under claim of ownership taken after the statute went into effect, would not have set the Statute of Limitations in operation as against the city, and can avail the defendant nothing, even if he showed privity existed between himself and the person

taking such possession. [Dice v. Hamilton, 178 Mo. 81; Brown v. City of Carthage, 128 Mo. 10; City of Columbia v. Bright, 179 Mo. 441; Moore v. Helvy, 235 Mo. 443.] Upon the question of title by adverse possession, the fact that the store mentioned stood up to where the extended line of defendant's possession would be, avails the defendant nothing, because the store building did not stand upon the strip in dispute.

If it be taken as a fact as the testimony tended to show, that the ice-house which stood upon a part of lots 1 and 2 was there as far back as fifty years prior to the time of the trial, that fact is not of any avail to the defendant under his claim of adverse possession for two reasons: It was necessary to show that the ice-house stood on the strip in dispute, or adverse possession of that strip, prior to August 1, 1866. The evidence fell short of doing so by about ten years. Possession taken after the act went into effect, would not start the Statute of Limitations into operation.

There is no record evidence, nor is there any definite oral testimony, to show a connection of the possession of the defendant with the possession of those who erected or owned the ice-house.

In Moore v. Helvy, 235 Mo. l. c. 448, it was said: "In the case of Adkins v. Tomlinson, 121 Mo. 487, both of the questions involved in this appeal were presented to this court for adjudication, namely, whether the evidence showed that one under whom defendant claimed had been in possession of the land in dispute, and whether the evidence showed that the defendant had succeeded to the alleged prior possession of the one under whom he claimed. This court in passing upon the question of the defendant's alleged succession to the possession of another, l. c. 494, said: 'Not only this, the evidence does not show that the defendant ever succeeded to such prior possession. Under such circumstances the possession of defendant could not be tacked to the possession of previous holders with which he had no connection. "There must be privity of grant or descent, or some judicial or other proceedings which shall connect the possessions, so that the latter shall apparently hold by right of the former." [Crispen v. Hannavan, 50 Mo. 536.]' "

The burden was upon the defendant to make out his claim of title by adverse possession (Fiorella v. Jones, 259 S. W. l. c. 785); and he wholly failed to establish his title by adverse possession.

The next question arises upon defendant's claim that the city is subject to an estoppel. It is urged that the city, by its attitude in respect to the property in dispute, allowed the defendant to take such a position that he will be greatly injured if the city is permitted to change its attitude. At this point it may be observed that the city took its right to the alley, as platted by the act of the owners of the land, and the defendant took his title to lots 1 and 2 by a deed referring to the plat or the additions so platted as part

of the description of the property conveyed. Ordinarily, parties taking title to property under and by reference to the same plat, are bound by the plat. [Laddonia v. Day, 265 Mo. 383.]

Upon the question of equitable estoppel defendant relies in the main upon the evidence heretofore mentioned. Counsel refer to the location of the old store building which stood on the parcel of ground south of the defendant's property, and extended out to the line which would coincide with an extension of the east line of defendant's property as his such property is occupied by him. They refer also to the fact that about thirty years before the trial the city acquired the parcel of ground south of defendant's property, and erected its fire-house thereon, according to the line of the store building, and the line of occupation of lots 1 and 2 by Whitsett and Langenbacher; and they refer also to the location of the ice-house on lots 1 and 2. There was testimony that at some time not definitely fixed, but about 1910 or 1912, the city constructed a concrete crossing at the crossing of the alley on the north line of Block 27, and also at the crossing at the south line of Block 27, and that these crossings were constructed so as to conform to the line of occupation of the property on the west side of the alley. The alley was not macadamized, nor was it used to a great extent by the public.

The doctrine of equitable estoppel is not generally applicable to municipal corporations, in matters pertaining to their governmental functions. [Dunklin County v. Chouteau, 120 Mo. 577; State ex inf. v. Light Co., 246 Mo. 618; Town of Montevallo v. Village School District, 268 Mo. 217.] The doctrine is applied only in exceptional cases, and is to be applied "with much caution." [City of St. Joseph v. St. Joseph Terminal Railroad Co., 268 Mo. 47, l. c. 65; Marshall v. City of Springfield, 221 S. W. (Mo.) 17.] It was not shown, nor can it be held here, that there was an abandonment by the city of the alley in question, or of the portion of it covered by the old ice-house, or by the shed, erected and covering part of the alley, or included in the fence erected by Whitsett.

In Marshall v. Springfield, supra, l. c. 18, it was said: "The rule obtains in this State that a city has no power to part with the title to its streets which it holds in trust for the public except by a valid vacation." There is shown in this case no affirmative attempt by the city by legislative action to vacate, abandon or affect the title of the city, to any part of the alley as dedicated by owners of the land. In the Marshall case, speaking of the strip of land twenty feet in width dedicated to public use, but which had been occupied by the plaintiff for many years, it was said: "The right of the public to use the way, and not the size of the way or the number of persons who may choose to exercise their right, determines its character."

In Town of Montevallo v. School District, supra, the town officers by an affirmative act made of record assumed to authorize the school district to take a square of ground which had been dedicated generally to the public use of the town, and to erect thereon a school house. The school district at great expense did erect and maintain a school house thereon. The doctrine of equitable estoppel was applied against the town.

In City of St. Joseph v. St. Joseph Terminal Railway Co., supra, the city council, as an inducement and to the end that the railway company should build its terminals in the city, passed an ordinance vacating a number of streets; but the ordinance did not mention the particular street involved in the suit, although it was a part of land adjoining the streets vacated. The railway company expended a half million dollars in building the terminals, and in doing so used the street in controversy in that case. At the time of the passage of the ordinance that street had never been opened, and was impassable for travel. After the building of the terminals and the issuance of bonds thereon by the railway company which had passed into the hands of innocent purchasers, the city undertook to open the street which had not been mentioned in the ordinance of vacation. The evidence tended to show, as is stated in the opinion, that the opening of that street was not a public necessity, and would destroy the value of the terminals. Under all of those circumstances the doctrine of estoppel was applied against the city.

In the case at bar the defendant did not testify, and say that in his purchase of the property, he relied upon the acts of the city, or was ignorant of the location of the west line of lots 1 and 2. Under the facts in this case, the policy of the State as announced in legislative acts and the rule followed by this court as heretofore mentioned, we are not warranted in applying the doctrine of estoppel against the city in this case. The circumstances shown are not of such an exceptional character as to require the application of that doctrine. It results that the judgment is reversed and the cause remanded. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.