Nola E. BROTHERTON, (Plaintiff) Respondent,

v.

CITY OF JACKSON, Missouri, and Louis Loos and Robert Hoffmeister, d/b/a Loos and Hoffmeister Construction Company, (Defendants) Appellants.

No. 31581.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1965.

Buerkle & Lowes, Albert C. Lowes, Paul Mueller, City Atty., Jackson, for appellants.

No counsel for respondent.

RUDDY, Presiding Judge.

This is an action by plaintiff for an injunction and for damages for an alleged trespass. The principal issue in the case is the determination of the location of the boundary line between plaintiff's property and a public street of the City of Jackson, Cape Girardeau County, Missouri. From a decree and judgment finding a boundary line and enjoining and prohibiting defendants from entering upon property north of the boundary line found by the court defendants have appealed.

The petition is in three counts. It is alleged by plaintiff in the combined counts that she is the owner of a tract of land in the City of Jackson, County of Cape Girardeau, State of Missouri, as more particularly described in the petition; that in the alternative to the description contained in the petition she states that she owns all property between her house and the asphalt roadbed of a street in Jackson, Missouri, known as the Old Cape-Jackson Road; that the defendants, Louis Loos and Robert Hoffmeister, doing business as Loos and Hoffmeister Construction Company, have a contract with the defendant City of Jackson to widen said Old Cape-Jackson Road

and to resurface said road and install curbings along the edges thereof; that the defendants and each of them through their agents, servants and employees "have trespassed on said property and threatened to continue trespassing upon said property, and further threaten to enter upon said land without the consent of the plaintiff and do irrepairable damage and injury to the plaintiff"; that no proceedings have been taken by the defendant City of Jackson as required by law for the ascertainment and the payment of damages to the plaintiff; that the house located on the described property was constructed to conform to the grade of said street and that the grade of said street has heretofore long since been established and used and that the defendant City of Jackson without lawful authority is lowering the actual grade of the Old Cape-Jackson Road "about three (3) feet and will greatly damage plaintiff's property"; that she (plaintiff) has not consented to the change of grade, nor have the damages which she has sustained been paid, nor has the defendant, City of Jackson, taken or begun any proceedings to have such damages ascertained and determined; that the defendants, Loos and Hoffmeister, have begun and are proceeding with the work of changing the grade of said street and that said action will greatly depreciate and damage said property.

It is further alleged by plaintiff in said petition that during the months of September and October 1962, defendants have trespassed on the property owned by the plaintiff and have damaged lawns, shrubs, trees and flowers and the foundation under plaintiff's house located on the above described property and as a result she has sustained severe mental anguish and pain; that as a result of these trespasses upon her property and injuries to her person she has been damaged in the amount of $10,000.

In the combined prayers contained in the petition she prays that defendants be enjoined and restrained from entering upon said land and from changing the grade of

said street and for judgment against said defendants in the amount of $10,000.

On the same day the petition was filed the court entered a restraining order directing "that the defendants be absolutely restrained and prohibited from entering upon the premises described in the petition, * * *."

Defendant, City of Jackson, in its answer denied the pertinent allegations of plaintiff's petition and alleged that the public roadway referred to in plaintiff's petition has existed for more than 100 years and that its existence was established in the case of State ex rel. Hines v. Cape Girardeau and Jackson Gravel Road Company, 207 Mo. 85, 105 S.W. 761, and definitely decided therein that the Old Cape-Jackson Road, which runs along the south of the plaintiff's described land, was a public road and was of 50 foot width. It further alleged that said right of way is definitely established by a plat on file in the office of the Recorder of Deeds, County of Cape Girardeau, Missouri, being filed in Plat Book 1 at page 32, wherein there is shown a center line, and the right of way purports to be 25 feet to each side thereof. It was further alleged that the proposed construction is well within the confines of the said 50 foot right of way and that no one can claim by adverse use any lands against the public, including the City of Jackson, Missouri. It is admitted in said answer that defendants Louis Loos and Robert Hoffmeister have a contract to widen said Old Cape-Jackson Road and to resurface said road and install curbing along the edges thereof. It denies that the grade of said roadway is being changed.

In a separate answer of Louis Loos and Robert W. Hoffmeister they deny the pertinent allegations of plaintiff's petition and admit that they have a contract with the defendant, City of Jackson, Missouri, to widen said Old Cape-Jackson Road and to resurface said road and install the curbing along the edges thereof.

In the year 1851 the Cape Girardeau McAdamized and Plank Road Company con-structed a macadamized or plank road and prior to said construction caused a line for a road from the City of Cape Girardeau in the County of Cape Girardeau, Missouri, to the Town of Jackson, Missouri, in said county, to be surveyed and marked out and in order to carry out its purpose the said company procured from certain owners of land a deed whereby the said grantors conveyed a permanent right of way through and over their respective lots and lands which were described in the deed executed by said landowners on the 25th day of September, 1851. By virtue of this deed a strip of ground 50 feet wide, along the line of said road, from the City of Cape Girardeau to the Town of Jackson was conveyed for a right of way. On November 6, 1907, in the case of State ex rel. Hines v. Cape Girardeau and Jackson Gravel Road Company, supra, the Supreme Court en Banc determined that this roadway was 50 feet in width and confirmed its establishment. This road has been referred to throughout the pleadings and the evidence herein as the Old Cape-Jackson Road. The road was a toll road and the toll house where the toll payments were made is the residence now located on the property claimed by the plaintiff. It seems the road remained a toll road until some time between 1905 and 1910 when the toll gate was taken down. Witnesses said that the toll was paid through the bay window of the house located on plaintiff's property and that the toll gate was located on the road at the house. At some time this 50 foot roadway was improved by paving it with a hard surface referred to by the witnesses as "blacktop." The record does not disclose the width of the blacktop pavement except that one witness testified that the asphalt pavement is about 20 feet from the center line, when describing the west side of the road adjoining plaintiff's property. In describing the present condition of this blacktop road on the west side he said that he had to dig back in the gravel and dirt a little bit to uncover the edge of the asphalt, because grass had grown over the asphalt pavement. It was

agreed by the parties that the City of Jackson has been maintaining the portion of the road which is presently blacktop.

As stated the principal issue in this case was the determination of the location of the boundary line between plaintiff's property and the Old Cape-Jackson Road. Plaintiff and her two sons were the only witnesses in plaintiff's case and their testimony is scarcely sufficient to establish the location of the boundary line in issue.

Plaintiff's evidence shows that the property in question was purchased by her and her husband who is now deceased. They bought the property from Mr. J. G. Kies in 1946. Plaintiff failed to introduce in evidence the deed under which she acquired title to the property. The toll house heretofore mentioned was on the property and is a two story house containing seven rooms, with a bay window that extended out toward the Old Cape-Jackson Road. Prior to the grading of the road there was a lawn between the house and the blacktop road. Plaintiff said she had a row of flowers set near the house and a grass lawn between the flowers and the blacktop road. The distance between the edge of the house and the edge of the blacktop road was approximately 6½ to 7 feet. One of plaintiff's witnesses described a two foot drop in the slope of the land between the house and the road. Plaintiff's sons mowed the grass between the house and the blacktop road from 1946, when plaintiff acquired the property, until the City of Jackson graded the road up to plaintiff's house. Plaintiff said that the City of Jackson never mowed any of the grass at any time on her side of the road. At one point in her testimony plaintiff claimed that all of the property up to the blacktop road was hers, but at a subsequent time in her testimony she admitted that she does not claim any land except that which is described in her deed, excluding two tracts that she sold, one on each side of her present tract. She thought her property ran up to the blacktop because she was told so by her grantor, Mr. Kies. She said she paid taxes on the land that was described in

her deed and that she did not intend to claim "somebody else's land." As stated, two tracts of land were sold from the original tract acquired by the plaintiff. These tracts of land were sold to plaintiff's sons and at the time she deeded the properties to her sons she had the land surveyed by Mr. W. J. Ferguson. However, no one who participated in this survey testified on behalf of plaintiff, nor was any evidence of this survey introduced by the plaintiff. However, Oscar Lee Brotherton, one of plaintiff's sons, questioned the accuracy of the Ferguson survey.

In preparing to pave the entire 50 foot width of the roadway and place curbings, the City of Jackson graded between the blacktop pavement and the house. Plaintiff said they graded the lawn and in the grading process "they jerked out great big roots off of those shrubs and I had flowers that were blooming along that road." She further testified "they have quite a bit of it tore away now real close to the house and jerked out one rock that was in under the side of the house, they got so close." One of plaintiff's witnesses testified, "it's been bulldozed out and it's been cut down about two foot, which I said it dropped off two foot * *." This is all the evidence shown in plaintiff's case.

Defendants in their case introduced the 1851 deed. Dr. D. I. L. Seabaugh, called as a witness by defendants, testified that he was 80 years of age and had lived in the county 57 years. As a young man he had many occasions to travel upon the Old Cape-Jackson Road and to pay the tolls required thereon. He said, "the gravel road there come plumb up to the bay window * * * you could drive up there with a buggy wheel right at the window, reach out and pay the toll." He said that the first time he traveled the road and paid the toll was in 1892 and that he went through the toll gate many times thereafter. Between 1905 and 1910 the payment of toll was abolished and the toll gate was taken down. He said that after the toll gate was taken down the road has always been there, stating that it was

not used as close to the house as it had been previously.

W. H. Wagner, a witness for the defendants, testified he was 86 years of age and had been a lifelong resident of the Jackson community. When shown a picture of the house on plaintiff's property he said it was the same house that was there when the tolls were collected, and described the bay window as the part that "sticks out there." When asked if it is the same today as the time it was used as a toll house, he answered, "I think so." He also testified that he would drive his buggy right up to the bay window of the toll house and hand in his money while sitting in the buggy.

Charles T. Farrow, City Engineer for the City of Jackson, testified that part of the house and part of the land claimed by plaintiff is in the 50 foot right of way. He made a number of scale drawings pertaining to the location of the road and its boundary relation to plaintiff's property and identified and explained these drawings in the course of his testimony. He admitted that all of the drawings with the exception of one had no beginning point that could be definitely tied down to the land itself. He admitted that without a beginning point it is impossible to plat the description on to the land itself with any degree of accuracy and in order to make a plat that would be accurate it would have to start with a beginning point that could be related to the land itself. He identified defendants' Exhibit J as a drawing and plat that reflected a survey of the actual center line of the road, which survey definitely fixed the beginning point as the center of a bridge on the east side of Hubble Creek. He said he followed this center line of the road from this beginning point, tying it in with the property markers along the way and carried it on past the plaintiff's property and reiterated that this exhibit was actually platted out on the land itself. It was from this drawing prepared from the survey referred to that the witness formed the conclusion that part of the house and part of the land of plaintiff was within the

50 foot right of way. He said he also made a drawing that represents the description in the 1946 deed to the plaintiff from Mr. Kies and said he was unable to locate the beginning corner of the property from the description that appeared in the deed. He said that some of the calls were missing in the deed and for this reason the description did not close and therefore was not accurate. Witness testified that none of the grading took place on any of plaintiff's land.

The defendants requested the court to make specific findings of fact and conclusions of law. Thereafter, the court entered a judgment dissolving the restraining order and entered a judgment and finding for the defendants. Within thirty days after entering the aforesaid judgment the court modified its order and judgment and entered a new order and judgment which established a boundary line between the boundary of the roadway claimed by the City of Jackson and the blacktop pavement and permanently enjoined defendants from entering north of said line. The court in its judgment entered a description of the boundary line found by it and then further described the boundary as a line approximately 6 inches north of the north curb line of the Old Cape Girardeau Jackson Road, said curb having been installed in 1962. We have not been favored with a brief from plaintiff (respondent).

 While it may be necessary to inquire into and make a finding respecting the title to plaintiff's property and the public right of way in order to determine the issues herein, nevertheless, title is not involved so as to vest the appellate jurisdiction in the Supreme Court. It has been held that our Courts of Appeals have jurisdiction to inquire into a title controversy incidentally or collaterally involved in the disposition of the presented issues on the merits. Cases seeking to enjoin a trespass on real estate frequently present an issue necessitating an inquiry into the title. It has been held in these cases that title was only collaterally in issue and not involved in the constitution-

al sense. Gibson v. Sharp, 364 Mo. 1007, 270 S.W.2d 721.

◼ A suit to establish a boundary line does not so involve the title to real estate as to confer appellate jurisdiction upon the Supreme Court, Albi v. Reed, Mo., 281 S.W. 2d 882, 1. c. 885. A case similar to the instant case is that of the City of Marshfield v. Haggard, Mo., 300 S.W.2d 419. In that case plaintiff, a municipal corporation in Webster County, Missouri, filed suit against defendant Beulah Haggard for the purpose of obtaining possession of land 50 feet in width and 260 feet in length, claiming the land to be a part of Burford Street in said municipality. The defendant contended that the plaintiff City did not own any interest in said block. The court held that the real dispute was not title but was a determination of the true south boundary line of Block 5, stating "Upon this appeal, defendant's sole claim is that the boundary of Block 5 as established by the decree is incorrect. Defendant does not deny that plaintiff City is entitled to an easement for street purposes. So, the sole issue in dispute, tried in the court below, was as to the proper south boundary line of defendant's property. It is evident that title to real estate is not involved so as to vest this court with appellate jurisdiction. Albi v. Reed, Mo., 281 S.W.2d 882, loc. cit. 885, 886 (5-8)." (300 S.W.2d 1. c. 420).

Similarly, the defendants in the instant case claim that the boundary line established by the decree of the court is incorrect. The jurisdiction of this case is in this court.

The trial court, although requested, in accordance with Civil Rule 73.01(b), V.A. M.S., to make specific findings of fact and conclusions of law, failed to do so in violation of said Rule. However, we need not comment any further about this omission, because a more serious error is apparent in the court's judgment which will require a reversal of the judgment.

◼ Defendants contend that the trial court erred in establishing a boundary line in its amended order in that there was no evidence to support such boundary line. There is not a scintilla of evidence offered either by the plaintiff or the defendants which will support the boundary line established by the court in its judgment. We are inclined to agree with the statement of defendants contained in their brief that "the trial court, by its modified order, appears to be making a compromise between the evidence offered by the plaintiff and the evidence offered by the defendant." It is quite obvious, as defendants contend, that the trial court traveled its own way and established a boundary line that has no support in the record in this case. A judgment must be based on something more substantial than mere guess or speculation or the effort of a trial court to compromise litigation. Bauer v. Wood, 236 Mo.App. 266, 154 S.W.2d 356, 1. c. 359. It is also the settled law that a judgment must conform, not only to the evidence, but to the pleadings, and a decree outside the record issues is invalid, Renken v. Sidebotham, Mo.App., 227 S.W. 2d 99, 1. c. 102.

Plaintiff, at first, based her claim on all of the land between her house and the existing blacktop road on the strength of what her grantor told her when she purchased the property. She thereafter made it clear that she claimed nothing more than the land described in her deed. Unfortunately, she did not introduce her deed into evidence in her case and failed to adduce any evidence, other than that stated, which showed the boundaries of her property according to the description in her deed. Defendants' witness, Charles T. Farrow, said that the description was inadequate because it failed to contain certain calls and thereby failed to close the description of the property. Also, he stated, that the beginning point referred to in the deed no longer existed. At least he could not find it. The defendants adduced evidence that showed a 50 foot right of way had been established by decision of the Supreme Court of Missouri in the case of State ex rel. Hines v. Cape Girardeau and Jackson Gravel Road

Company, supra. A plat drawn by the City Engineer which had a specified beginning point that could be traced to the land showed that a part of plaintiff's house and land is on the roadway easement. This was not rebutted in any respect by the plaintiff. There is nothing in the record which showed that the boundary line as found by the court conforms to any of the evidence adduced by the plaintiff or the defendants and, therefore, the court erred in entering its order and judgment establishing the boundary line.

Further, we hold that plaintiff's evidence fails to establish any boundary line, whereas defendants' evidence clearly demonstrated that the right of way as established in the Supreme Court decision and as found and defined in one of defendants' plat drawings establishes a boundary and shows that a part of plaintiff's house and land will be on defendants' right of way. Therefore, plaintiff failed to prove that the defendants trespassed and entered upon her premises. Also, plaintiff failed to prove that the defendants changed the grade of the street. It will be remembered that one of the sons of plaintiff testified that the drop in the slope of the ground from the house to the blacktop was approximately two feet. There was no evidence adduced upon the part of plaintiff to show that there was any change in this grade of the street. For this reason, the judgment of the trial court should be reversed outright.

█ While plaintiff in her pleadings did not claim the land between her house and the blacktop road by reason of adverse possession we feel it appropriate to point out that no such claim could be made in view of § 516.090 RSMo 1959, V.A.M.S., which provides: "Nothing contained in any statute of limitations shall extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use, or to any lands belonging to this state."

It was held in the case of Bowzer v. State Highway Commission, Mo., 170 S.W.2d 399, that one cannot acquire title by adverse possession to the land within the correct boundaries of a public right of way.

The act embodying this section 516.090, supra, went into effect August 1, 1866, as a part of the general statutes of 1865 (Chap. 191 § 7). In the case of City of Pacific v. Ryan, 325 Mo. 373, 28 S.W.2d 652, 1. c. 654, the court said: "To make that statute inapplicable in this case, it was necessary that defendant (plaintiff here) show that he was successor in title and possession of some one who, under claim of ownership, took and held possession as against the city before August 1, 1866. A possession under claim of ownership taken after the statute went into effect would not have set the statute of limitations in operation as against the city, and can avail the defendant (plaintiff here) nothing, even if he showed privity existed between himself and the person taking such possession." (Parentheses ours.)

For the reasons given heretofore the judgment of the trial court is reversed and the cause is remanded to the trial court with directions to dissolve the restraining order heretofore entered by said court and to enter judgment for the defendants on all counts contained in plaintiff's petition.

WOLFE and ANDERSON, JJ., concur.